CALIFORNIA HOSPITAL ASSOCIATION, a nonprofit California corporation; White Memorial Medical Center, a nonprofit California corporation, Plaintiffs,

v.

Richard SCHWEIKER, Secretary of Health and Human Services; Beverlee A. Myers, Director of Department of Health Services, State of California, Defendants.

UNITED HOSPITAL ASSOCIATION, a nonprofit corporation, Plaintiff,

v.

STATE DEPARTMENT OF HEALTH SERVICES, State of California, Defendant.

CHILDREN'S HOSPITAL MEDICAL CENTER OF NORTHERN CALIFORNIA, et al., Plaintiffs,

v.

STATE OF CALIFORNIA, et al., Defendants.

Nos. CV 82–0297–CHH (JRx), CV 82–0991–CHH (Px) and CV 82–684–CHH (JRx).

United States District Court, C.D. California.

June 23, 1982.

Musick, Peeler & Garrett, Charles F. Forbes, James E. Bertero, Thomas B. Curtis, Los Angeles, Cal., for Cal. Hospital Ass'n & White Memorial Center.

George Deukmejian, Atty. Gen., Anne S. Pressman, Barbara M. Motz, Deputy Attys. Gen., Los Angeles, Cal., for defendants Beverlee A. Myers and State Dept. of Health Services.

Weissburg & Aronson, Patric Hooper, Mark Windisch, Los Angeles, Cal., for United Hospital Ass'n.

Hanson, Bridgett, Marcus, Vlahos & Stromberg, Michael Duncheon, San Francisco, Cal., for Children's Hospital.

Stephen S. Trott, U.S. Atty., Frederick M. Brosio, Jr., Asst. U.S. Atty., Chief, Civ. Div., Carolyn M. Reynolds, Ian Fan, Asst. U.S. Attys., Los Angeles, Cal., for Federal defendant.

CYNTHIA HOLCOMB HALL, District Judge.

## JUDGMENT GRANTING

## PERMANENT INJUNCTION

IT IS ORDERED, ADJUDGED AND DECREED, based upon the Findings of Fact and Conclusions of Law filed June 23, 1982, that implementation of the State Plan Amendment is unlawful and is enjoined until such time as the State Department of Health Services makes a finding in compliance with statutory and regulatory requirements as to the reasonableness and adequacy of the proposed rates to meet the costs of efficiently and economically operated hospitals, submits an assurance to the Department of Health and Human Services that it has made such a finding, and receives Department of Health and Human Services approval.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

1. The State of California participates in the Medicaid program established by the Medicaid Act, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.,* under which federal funding is provided for qualified state programs to furnish medical assistance to certain persons of low income. California's qualified Medicaid plan is called Medi-Cal. Amendments to California's plan require federal approval. The Department of Health Services of the State of California ("State DHS") cannot implement such changes without federal approval, since doing so would mean loss of federal funding.

2. Plaintiff California Hospital Association ("CHA") is a non-profit corporation, organized and existing under the laws of the State of California, with its principal offices in Sacramento, California. CHA is a state hospital association representing over 500 member hospitals in the State of California and brings this action on behalf of its aggrieved member hospitals, most of which participate in the Medi-Cal program.

3. Plaintiff White Memorial Medical Center ("White") is a non-profit corporation, organized and existing under the laws of the State of California, with its principal place of business in Los Angeles, California. White is a provider of inpatient hospital services under the Medi-Cal program.

4. Plaintiff United Hospital Association ("UHA") is a non-profit corporation, organized and existing under the laws of the State of California. UHA is an association

of approximately 130 hospitals located throughout California and is organized for the purpose of representing its members in matters of common concern. UHA brings this action on behalf of its member hospitals.

5. Plaintiffs Children's Hospital Medical Center of Northern California, Children's Hospital of Los Angeles, Valley Children's Hospital and Guidance Clinic of Fresno, Children's Hospital and Health Center of San Diego and Children's Hospital of Orange County (collectively "Children's Hospitals") are all non-profit corporations organized and existing under the laws of the State of California. Children's Hospitals are providers of inpatient hospital services under the Medi-Cal program.

6. Defendant Richard Schweiker ("Secretary") is the Secretary of the Department of Health and Human Services ("DHHS"), the federal agency charged with responsibility for the administration of the federal Medicaid program. Defendant Carolyn K. Davis ("Administrator") is the Administrator of the Health Care Financing Administration ("HCFA"). HCFA is responsible for the review and approval of state Medicaid plans and plan amendments.

7. Defendant Beverlee A. Myers ("Director") is the Director of the State DHS, the single state agency charged with responsibility for the administration of Medi-Cal pursuant to 42 C.F.R. § 431.10. Defendant Mary Ann Graves is the Director of the Department of Finance of the State of California. Defendant Kenneth Cory is the Controller of the State of California.

8. State Medicaid programs, including Medi-Cal, are required to reimburse hospitals for inpatient services in accordance with federal Medicaid law and the regulations implementing that law. Prior to August 31, 1981, the federal Medicaid Act required that states pay providers the "reasonable cost" of rendering inpatient hospital services.

9. On August 13, 1981, section 2173 of the Omnibus Budget Reconciliation Act of 1981, Pub.L. No. 97–35 Stat. 808–809 ("OBRA") amended the Medicaid provisions for determining reimbursement for inpatient hospital services. Among the changes was the removal of the requirement to pay the reasonable cost of inpatient services and the substitution of the requirement that a state pay for inpatient services:

[T]hrough the use of rates (determined in accordance with methods and standards developed by the State) and which, in the case of hospitals, take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs and provide, in the case of hospital patients receiving services at an inappropriate level of care ..., for lower reimbursement rates reflecting the level of care actually received ... which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality; ...

42 U.S.C. § 1396a(a)(13)(A) as amended.

10. On September 30, 1981, DHHS, through HCFA, published regulations implementing 42 U.S.C. § 1396a(a)(13)(A) ("DHHS regulations"). The DHHS regulations were published as amendments to 42 C.F.R. Part 447. Federal Register Vol. 46, No. 189, at 47971–47973, September 30, 1981. Those regulations provide in pertinent part:

"447.250 *Basis and purpose.*

Sections 447.251 through 447.265 of this subpart implement section 1902(a)(13)(A) of the Act, which requires that the State plan provide for payment for hospital ... services through the use of rates that the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated facili-

ties to provide services in conformity with State and Federal laws, regulations, and quality and safety standards."

\* \* \*

"447.252 *General requirements.*

(a) *Payment rates.* (1) The Medicaid agency must pay for inpatient hospital services and long-term care facility services through the use of rates that are reasonable and adequate to meet the costs that must be incurred by efficiently and economically operated providers to provide services in conformity with applicable State and Federal laws, regulations, and quality and safety standards.

(2) The payment rates used by the Medicaid agency must be determined in accordance with methods and standards developed by the agency.

(3) With respect to inpatient hospital services—

(i) The methods and standards used to determine payment rates must take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs; ...

\* \* \*

(iii) The payment rates for such services must be adequate to assure that recipients have reasonable access, taking into account geographic location and reasonable travel time, to inpatient hospital services of adequate quality.

(b) *State findings.* The Medicaid agency must find that the rates used to reimburse providers satisfy the requirements of paragraphs (a)(1) and (a)(3) of this section.

(c) *State assurances.* The Medicaid agency must make assurances satisfactory to the Secretary that the requirements of paragraphs (a)(1), (a)(3)(iii), (b), and (f) of this section are met and that, in making significant changes in its methods and standards for determining payment rates, it has complied with the public notice requirements in § 447.254.

(d) *Submittal of assurances and related information.* The Medicaid agency must comply with the requirements regarding submittal of assurances and related information in § 447.255. . . . "

\* \* \*

"447.253 *State plan requirements.*

(a) The plan must provide that the requirements of this subpart are met.

(b) The plan must specify the methods and standards used by the agency to set payment rates. . . .

(d) The plan must provide that the agency will make the findings and submit the assurances and related information to HCFA, as required under §§ 447.252 and 447.255."

\* \* \*

"447.255 *Submittal of assurances and related information.*

(a) *Assurances.* The Medicaid agency must submit the assurances in § 447.252(c) before the end of the calendar quarter that includes the date on which the rate has been in effect for one year, or whenever the agency wishes to make a significant change in its methods and standards for determining the rate, whichever is earlier.

(b) *Related information.* The Medicaid agency must submit, with the assurances described in § 447.252(c), the following information:

(1) The amount of the average proposed payment rate for each type of provider . . . , and the amount by which that average rate increased or decreased relative to the average payment rate in effect for each type of provider for the immediately preceding rate period;

(2) A quantified estimate of the short-term and, to the extent feasible, long-term effect the change in the rate will have on—

(i) The availability of services on a Statewide and geographic area basis;

(ii) The type of care furnished (for example, secondary or tertiary care);

(iii) The extent of provider participation; and

(iv) The degree to which costs are covered in hospitals that serve a disproportionate number of low income patients with special needs."

"§ 447.256 *Procedures for HCFA action on assurances.*

(a) *Time limit for action.* HCFA will review the related information described in § 447.255 to determine the reasonableness of significant changes in the items specified in paragraph (b)(2) of that section that result from a change in the average proposed payment rate. HCFA will notify the agency of its determination as to whether the agency's assurances regarding a proposed rate are acceptable within 60 days of the date HCFA receives the assurances described in paragraph (c) of § 447.252 and the related information described in paragraph (b) of § 447.255.

If HCFA does not notify the agency of its determination within this time limit, the assurances will be deemed accepted.

(b) *Effective date.* (1) Except as specified in.paragraph (b)(2) of this section, a proposed payment rate with respect to which HCFA has accepted assurances or with respect to which an assurance has been deemed accepted under this section will be effective on the date specified in the agency's assurances.

(2) A payment rate with respect to which HCFA has accepted assurances or with respect to which an assurance has been deemed accepted under this section will not be effective for any period beginning before the first day of the calendar quarter in which the agency submits the assurances and related information described in § 447.-255."

11. Effective July 1, 1981, the California Legislature enacted Assembly Bill 251 which added section 14105.1 of the Welfare and Institutions Code. Section 14105.1 imposes, in substance, a 6% cap on increases in reimbursement for inpatient hospital services. On October 1, 1981, the Legislature of California enacted Assembly Bill 1260 as urgency legislation with immediate effect, repealing old section 14105.1 of the Welfare and Institutions Code and adding new section 14105.1 of the Welfare and Institutions Code. (These acts are referred to collectively hereafter as the "State Legislation.") The new statute provides:

(a) Notwithstanding any other provision of law, to the extent permitted by federal law, reimbursement to hospitals for inpatient services rendered to Medi-Cal program beneficiaries between July 1, 1981 and June 30, 1982, shall be adjusted to provide that the average payment per discharge upon final settlement shall not exceed a rate of increase of 6 percent over the average payment per discharge at final settlement for services rendered during the period of July 1, 1980 to June 30, 1981.

(b) Interim payment rates to hospitals shall be adjusted on October 1, 1981, or as shortly thereafter as reasonably possible and consistent with federal law, to accomplish a rate of payment increase to hospitals for inpatient services for the period of July 1, 1981 to June 30, 1982, which is consistent with the provisions of this section.

(c) It is the intent of the Legislature that the reimbursement principles employed by the department in final settlement pursuant to this section will be the methods in effect prior to October 1, 1981, for any services rendered prior to that time, and for services rendered between October 1, 1981, and June 30, 1982, that reimbursement principles be in accordance with the alternative methods adopted for use subsequent to October 1, 1981.

(d) Nothing in this section shall be construed to limit adjustments to hospital. reimbursement based upon volume or case mix changes.

12. On October 1, 1981, State DHS promulgated 22 California Administrative Code § 51538 to implement the 6 percent cap.

13. On September 30, 1981, the Director of the State DHS submitted a proposed amendment to the California Medi-Cal plan ("State Plan Amendment") to DHHS. The State Plan Amendment consisted of a three-page letter from the Director dated September 30, 1981, and a 13-page "Proposed State Plan—Reasonable Cost of Inpatient Hospital Services—Attachment 4.19–A" dated September 11, 1981, and subtitled "State Plan Under Title XIX of Social Security Act."

14. On October 9, 1981, a HCFA Regional Office Associate Administrator wrote the Director confirming receipt of the State Plan Amendment, noting the absence of the assurances required in the DHHS regulations and the inconsistency between the State Plan Amendment's proposed effective date and the provisions of the DHHS regulations.

15. On November 13, 1981, State DHS submitted a four-page undated, unsigned document entitled "Background Support for Proposed State Amendment" ("background support document") to HCFA.

16. On November 16, 1981, the Director sent the HCFA Regional Office Associate Administrator a letter ("assurances letter"), consisting of seven pages, making assurances and providing information in purported compliance with DHHS regulations. The assurances letter requested approval of the September 30, 1981 State Plan Amendment and did not purport to alter the proposed effective date of the State Plan Amendment.

17. State DHS did not make an assurance that it had made findings as required by DHHS regulations. 42 C.F.R. § 447.-252(c). Instead, State DHS submitted its findings to HCFA in the form of the background support document and the assurances letter, which referred to the data and comparisons in the background support document.

18. The background support document and Table 1 contained therein were prepared in an effort to develop the best case for the 6 percent cap and were based on the premise that efficiently and economically operated hospitals in California would operate in accordance with the figures designated as U.S. averages in Table 1. Relevant facts which did not support this premise were intentionally omitted from the background support document. Among the disregarded facts was a comparison of average California hospital costs with the average costs of hospitals in industrial states which had approved alternative reimbursement systems under Medicaid believed by the author of the background support document to be the most valid comparison of hospital cost averages.[1]

19. On December 8, 1981, the Director modified the September 30, 1981 State Plan Amendment and supplemented the November 16, 1981 assurances letter by writing a one-page letter to the HCFA Regional Office Associate Administrator enclosing two amended pages of the Attachment 4.19–A originally submitted on September 30, 1981.

20. On December 14, 1981, the Director again modified the State Plan Amendment by writing a one-page letter to the HCFA Regional Office Associate Administrator enclosing as a single-page amendment the Attachment 4.19–A. The amendment clari-

---

1. The background support document was authored by John Chambers, who was then Director of Hospital Reimbursement for the Rate Development Branch of DHS. Chambers has an A.B., M.A. and Ph.D. in economics and formerly held the position of Director of Research for the Office of Statewide Health Planning Development. He testified at trial that his instructions as to the formulation of the background support document "were to develop the best case that [he] could for the acceptability of the six-percent [cap] vis-a-vis federal law." Chambers stated that the background support document was his "best effort to develop an argument that would be satisfactory to the federal government" and that he told the people at DHS that the background support document was the "best case [he] could make."

Chambers testified that of the eight to ten indices or measures of comparison he considered, he selected the "five ... indicators that made the best case for the state as far as [he] was concerned, which to [his] mind was the purpose of writing the document.... The other three to five led to implied different results.... The other indicators would not have made as strong a case, and in some cases, would have contradicted the cases as made by [the chosen] indicators." Chambers was asked by counsel for CHA, "Is that why they were not included in Table 1?" Chambers replied, "Yes."

Chambers further testified that the background support document "is based upon the premise that economically and efficiently run hospitals would, by definition, operate at the figures specified under the column of U.S. averages for the various variables. [¶] If that premise is accepted, then the rest of the argument on which the paper is based flows from that premise." When asked by counsel for CHA if he believed "that premise to be valid at the time that [he] prepared the paper," Chambers answered, "I personally did not believe that premise to be valid, no."

fied the standard for determining rates for inpatient hospital services and also altered the State Plan Amendment's reimbursement procedures for inappropriate levels of care.

21. On December 28, 1981, the HCFA Regional Office Associate Administrator approved the State Plan Amendment submitted September 30, 1981, as modified on December 8 and on December 14, 1981. The approval was expressly based upon the Director's assurances of November 16, 1981.

22. These Findings of Fact address only those facts necessary to the Court's resolution of this case.

23. To the extent that any Conclusions of Law are deemed to be Findings of Fact, they are incorporated into these Findings of Fact.

## CONCLUSIONS OF LAW

1. To the extent that any Findings of Fact are deemed to be Conclusions of Law, they are incorporated into these Conclusions of Law.

2. Jurisdiction of this action is founded upon 28 U.S.C. § 1331(a).

■ 3. The Court's standard of review is governed by 5 U.S.C. § 702 *et seq.* and California Government Code § 11500 *et seq.* Under the narrow "arbitrary or capricious" standard of review, 5 U.S.C. § 706(2)(A), the Court must determine whether the agency action was based upon a consideration of the relevant factors and whether there was a clear error of judgment. *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1970); *Hotel Emp. Ass'n of San Francisco v. Gorsuch,* 669 F.2d 1305, 1307 (9th Cir.1982); *Nance v. Environmental Protection Agency,* 645 F.2d 701, 705 (9th Cir. 1981). The standard of review is highly deferential, presuming the agency action to be valid and affirming the agency action if a reasonable basis exists for its decision.

*Hotel Emp. Ass'n of San Francisco v. Gorsuch, supra,* at 1307; *Washington State Farm Bureau v. Marshall,* 625 F.2d 296, 302 (9th Cir.1980); *Ethyl Corp. v. Environmental Protection Agency,* 541 F.2d 1, 34 (D.C. Cir.1979). The Court may not substitute its judgment for that of the agency. *See Citizens to Preserve Overton Park v. Volpe, supra,* 401 U.S. at 416, 91 S.Ct. at 823; *State of Cal. by and through Brown v. Watt,* 520 F.Supp. 1359, 1384 (C.D.Cal.1981).

■ 4. The Court's scope of review is limited to an examination of the administrative record as it existed at the time the agency made its decision. *Asarco, Inc. v. U.S.E.P.A.,* 616 F.2d 1153, 1160 (9th Cir. 1980); *Southeast Alaska Conservation Council v. Watson,* 526 F.Supp. 202, 206 (Ark.1981).

If the reviewing court finds it necessary to go outside the administrative record, it should consider evidence relevant to the substantive merits of the agency action only for background information ... or for the limited purposes of ascertaining whether the agency considered all the relevant factors or fully explicated its course of conduct or grounds of decision. [Citation] Consideration of the evidence to determine the correctness or wisdom of the agency's decision is not permitted, even if the court has also examined the administrative record. If the court determines that the agency's course of inquiry was insufficient or inadequate, it should remand the matter to the agency for further consideration and not compensate for the agency's dereliction by undertaking its own inquiry into the merits.

*Asarco, Inc. v. U.S.E.P.A., supra,* at 1160.

5. The Secretary's regulations, published on September 30, 1981, 46 Fed.Reg. §§ 47964–47973, are a reasonable implementation of Section 2173 of OBRA and are valid.

■ 6. DHHS properly applied its regulations in accepting California's assurances

and approving the State Plan Amendment. The acceptance of California's assurances and approval of the State Plan Amendment was reasonable and not arbitrary or capricious.

7. The findings made by State DHS that the rates proposed in the Plan Amendment are reasonable and adequate to pay the necessary costs of efficiently and economically operated hospitals do not satisfy the requirements of 42 C.F.R. § 447.252(b) and other pertinent federal law.

8. The assurance given by State DHS with respect to the reasonableness and adequacy of the proposed rates to meet the necessary costs of efficiently and economically operated hospitals was not based upon a proper finding of fact. Instead, the assurance was based upon an effort to develop the best case for the State Plan Amendment, considering only those factors favorable to the State Plan Amendment and intentionally failing to consider and excluding equally relevant factors which were unfavorable. The assurance therefore has no reasonable basis.

9. State DHS adoption of the 6 percent cap without making a finding as to the reasonableness and adequacy of the proposed rates to meet the costs of efficiently and economically operated hospitals after considering all the relevant factors is arbitrary and capricious and inconsistent with law.

10. Implementation of the State Plan Amendment is unlawful and is enjoined until such time as the State DHS, after consideration of all the relevant factors, makes a finding in compliance with statutory and regulatory requirements as to the reasonableness and adequacy of the proposed rates to meet the costs of efficiently and economically operated hospitals, submits an assurance to DHHS that it has made such a finding, and receives DHHS approval.

11. The Court does not reach the other issues raised in this action.

ACCORDINGLY, plaintiffs are entitled to injunctive relief as to implementation of the State Plan Amendment.