The **NEBRASKA HEALTH CARE ASSO-CIATION, INC., et al., Plaintiffs,**

**v.**

**Gina DUNNING, et al., Defendants.**

**No. CV82–L–472.**

United States District Court, D. Nebraska.

Nov. 16, 1983.

Royce Harper, Asst. Atty. Gen., Lincoln, Neb., for state defendants.

Sally R. Johnson, Asst. U.S. Atty., Lincoln, Neb., Paul P. Cacioppo, Regional Atty., Dept. of Health & Human Services, Kansas City, Mo., for federal defendants.

## MEMORANDUM ON MOTIONS FOR SUMMARY JUDGMENT

URBOM, Chief Judge.

This action was filed on behalf of nursing homes and nursing home residents in Nebraska, contesting federal and state practices and policies for reimbursement to nursing homes for long-term care of the elderly under the Medicaid program, 42 U.S.C. §§ 1396 et seq.; they contend that under those practices and policies they have not been adequately compensated for providing services to the elderly. Count III—the only remaining claim against the federal defendants—alleges that the Department of Health and Human Services has failed to define an essential term which is used in Medicaid statutes and regulations and that this allows the Department to use subjective and unannounced criteria when it determines whether state payment rates satisfy federal requirements; the plaintiffs argue that this deprives them of their rights under the Fifth Amendment and 5 U.S.C. § 706(2). Declaratory and injunctive relief are sought.

The federal defendants have filed a motion for summary judgment, filing 42, and the plaintiffs have filed a cross-motion for summary judgment, filing 58. The federal defendants argue that the plaintiffs' motion was filed after the deadline set by the magistrate for filing such motions. This is true, but I think it better in this proceeding to consider both motions. As pointed out in 6 *Moore's Federal Practice* ¶ 56.12, 56–331 to 56–334, where one party has invoked the power of the court to render a summary judgment against an adversary, Rules 54(c) and 56 of the Federal Rules of Civil Procedure, when read together, give the court the power to render a summary judgment for the adversary if it is clear that the case warrants that result, even though the adversary has not filed a cross-motion for summary judgment.

Under the Medicaid program, federal and state governments share the cost of caring for the elderly in nursing homes. A state is not required to join the program, but if it does, it must submit to the Secretary of Health and Human Services a state plan which satisfies all relevant federal requirements. 42 U.S.C. § 1396a(a). The Secretary must approve any plan which meets those requirements. 42 U.S.C. § 1396a(b). Section 1396a(a)(13)(A) requires that the state plan provide for payment to the skilled nursing and intermediate care facilities under rates "which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations and quality and safety standards." Accordingly, the Department of Health and Human Services has implemented a series of regulations. See 42 C.F.R. §§ 447.250 to 447.280. Section 447.252(b) provides that the payment rates used by the state must be determined in accordance with methods and standards developed by the state. The federal statutes and regulations do not define what an "efficiently and economically operated facility" is, and it is that omission which the plaintiffs challenge.

The issue raised by the plaintiffs was first discussed in *Alabama Nursing Home Association v. Harris*, 617 F.2d 388, 394 (5th Cir.1980). In that case the association challenged the Secretary's approval of a state payment plan and the Secretary's failure to define "efficiently and economically operated facilities" under § 1396a(a)(13)(E), which since has been repealed. The court's discussion of the second issue was brief. After holding that the association had rebutted the presumption of validity that attaches to all federal agency actions, the court said that the agency's lack of a definition meant that it had failed to define the specific criteria or standards by which state and federal officials could determine the meaning of crucial statutory and regula-

tory terms. Its only other comment on the absence of a definition was to have the district court require the agency to establish a definition. 617 F.2d at 393–394.

After the court's decision was released, Congress adopted the Boren Amendment, which is codified at 42 U.S.C. § 1396a(a)(13)(A). The amendment was part of the Omnibus Reconciliation Act of 1980, the purpose of which was to make reductions throughout the existing federal budget. Report of the House Budget Committee on the Omnibus Reconciliation Act of 1980, House Report No. 96–1167, 96th Cong., 2d Sess. at 1; reprinted in 1980 U.S.Code Cong. & Admin.News 5526, 5527. Under the old statute considered in *Alabama Nursing Home Association*, supra, the state was to pay nursing homes on "a reasonable cost related basis, as determined in accordance with methods and standards which shall be developed by the State on the basis of cost-finding methods approved and verified by the Secretary." 42 U.S.C. § 1396a(a)(13)(E) (1979). The new statute required compensation based on the "costs which must be incurred by efficiently and economically operated facilities." 42 U.S.C. § 1396a(a)(13)(A). The amendment's sponsor, Senator David Boren, explained that under the old law, states were required by the federal government to adopt inflationary and complex methods of reimbursement.

"In contrast, this amendment permits and encourages States to develop simpler, more efficient ways of paying for nursing-home care, including budget-based and negotiated rates."

Boren criticized the court's decision in *Alabama Nursing Home Association*, arguing that there was not necessarily a correlation between the administrative requirements and definitions imposed by the federal government and the quality of care provided. He said that his amendment would turn the federal government's attention from the methods used by each state in determining reimbursement rates to the quality of care that was being provided. He noted that all state plans still were subject to the Secretary's final approval.

126 Cong.Rec. S8926 (daily ed. June 30, 1980).

The legislative history makes it clear that Congress had two reasons for passing the amendment. First, "Congress intended that states set their own reimbursement rates without stifling and expensive federal oversight of the methodology used, as has been the case.... Probing beyond the bottom line to the underlying rate setting methodology is not required under the new standard." *Mississippi Hospital Association, Inc. v. Heckler*, 701 F.2d 511, 521 (5th Cir.1983), quoting from *Coalition of Michigan Nursing Homes, Inc. v. Dempsey*, 537 F.Supp. 451, 459 (E.D.Mich.1982). Second, Congress wanted to reduce Medicaid expenses by allowing the states to develop payment systems which would encourage efficiency. 126 Cong.Rec. S8927 (daily ed. June 30, 1980) (Statement of Sen. Boren); *Alabama Hospital Association v. Beasley*, 702 F.2d 955, 958 (11th Cir.1983).

After the adoption of the amendment, the new statute was considered by two courts. In *Mississippi Hospital Association*, supra, the association complained that the Secretary had not yet defined what an "efficiently and economically operated" facility was. The court said that current federal regulations required the Secretary to receive certain assurances from the states and while these requirements were not onerous, they were enough to satisfy the new statutes, and that its earlier decision in *Alabama Nursing Home* no longer applied because of the new statute. 701 F.2d at 521–522. Later, in *Alabama Hospital Association*, supra, the Eleventh Circuit Court of Appeals said that the unique circumstances of the case before it made it unnecessary to decide whether the Secretary had to write a definition. 702 F.2d at 958.

I recognize that the term "efficiently and economically operated facilities" is crucial. The costs for such a facility are used to calculate the payment rates for all other facilities in the state, and two different definitions could produce dramatically dif-

ferent payment schedules. But while this term must be defined, I do not believe that this responsibility should be placed on the Secretary. To my knowledge, the only feasible way to define an efficiently operated facility is in terms of the costs it incurs in caring for patients: the lower the costs, the more efficient the facility, assuming that the standard of care remains constant. For example, Mississippi and Michigan rank the facilities in their states from most expensive to least expensive in terms of cost-per-patient-day and then calculate the eightieth percentile figure. That figure becomes, in effect, a mythical efficiently operated facility. Twenty per cent of the facilities in the state have greater costs than this imaginary facility, but they are reimbursed only at the rate established by the imaginary facility's costs. See *Mississippi Hospital Association,* supra, 701 F.2d at 516; *Coalition of Michigan Nursing Homes, Inc. v. Dempsey,* 537 F.Supp. 451, 453 (E.D.Mich.1982). Alabama and Georgia use the sixtieth percentile, which means that even fewer facilities in those states are considered to be efficiently operated. See *Alabama Nursing Home Association,* supra, 617 F.2d at 391, 394, n. 9.

■ Given this relationship between costs and efficiency, a federal definition of what constitutes an efficiently operated facility necessarily would determine what the costs of that facility were. For example, if the Secretary chose the sixtieth percentile, then the state would have to pay the costs which were incurred at that percentile. Indeed, the statute itself says the state must pay for "the costs which must be incurred by efficiently and economically operated facilities." If a facility is efficient, all its costs were necessary ones; if a facility incurs a cost which is unnecessary, the facility is not efficient. Therefore, if the Secretary defined what constituted an efficiently operated facility, the Secretary in effect would determine what payments the state would have to make. However, that would directly conflict with Congressional intent to allow the states to determine their own methods for calculating proper pay-

ments and to reduce their current payment levels.

■ If the purposes of the Boren Amendment are to be accomplished, a state must be able to determine what constitutes an efficiently operated facility. Congress gave the states a tremendous amount of flexibility so the states could reduce the costs of administering Medicaid programs and encourage efficiency on the part of facility operators; at the same time, Congress maintained the Secretary's final authority to disapprove state plans. Report of the House Budget Committee, supra, at 154; reprinted in 1980 U.S.Code Cong. & Admin.News at 5944. But while the Secretary has retained her final authority, she has lost a considerable amount of day-to-day power. Under the old law, the Secretary had to "approve and verify" the adequacy of each state plan; today, the state need provide only assurances which "satisfy" the Secretary. Indeed, the Secretary's oversight power has been, reduced so significantly that a federal court has held that the Secretary properly accepted California's reimbursement plan and assurances, even though subsequent litigation showed that those assurances were false. *California Hospital Association v. Schweiker,* 559 F.Supp. 110, 116–117 (C.D.Cal.1982). Given these factors, I believe that the new statute places the Secretary in the role of intervening only when a state abuses the flexibility bestowed upon it by Congress. This role would explain Senator Boren's statement that his amendment would abrogate the decision in *Alabama Nursing Home Association,* supra, by turning the federal government's attention from day-to-day, detailed supervision of state Medicaid programs to addressing the quality of care being provided. As I read the statute, the Secretary is to invoke her intervening power when she perceives that the quality of care being provided to nursing home patients is inadequate.

The plaintiffs argue that unless the term "efficiently and economically operated facilities" is defined, the Secretary will be able to approve plans using vague and sub-

jective criteria, in violation of the Fifth Amendment right to due process. However, the cases which concern § 1396a(a)(13)(A) do not discuss the Fifth Amendment. *Alabama Nursing Home Association,* supra, upon which the plaintiffs base most of their arguments, says that the Department of Health, Education and Welfare failed to perform its "proper statutory and regulatory duties," 617 F.2d at 393, and does not mention due process. *Mississippi Hospital Association,* supra, spoke of statutory and regulatory requirements, but not the Fifth Amendment. 701 F.2d at 521. And *Alabama Hospital Association,* supra, specifically said that the Secretary's failure to establish a definition did not implicate basic due process rights. 702 F.2d at 958, n. 6. Finally, *California Hospital Association,* supra, analyzes the Secretary's acceptance of state assurances solely in the context of 5 U.S.C. § 706(2)(A), under which a reviewing court must uphold an agency's action unless it is "arbitrary or capricious." 559 F.Supp. at 116. The complete absence of any reference in these cases to the Fifth Amendment is significant, especially since the plaintiffs here have failed to identify a protected liberty or property interest which would invoke the Fifth Amendment's protections.

■ At this point I note that Count III of the complaint alleges a violation of 5 U.S.C. § 706(2). That section merely provides that a federal court which is reviewing an agency action shall set aside those actions which are arbitrary and capricious, contrary to constitutional rights, in excess of the agency's authority, or unsupported by substantial evidence. An agency's actions cannot violate this section; rather, they are to be reviewed under this section. As I explained above, the Secretary's failure to define "efficiently and economically operated facilities" is consistent with the purposes of the statute as reflected in the legislative history and as expounded by the courts. The plaintiffs' arguments, and the cases cited to support those arguments, ask me to require the Secretary to impose a crucial definition and detailed standards,

whereas the legislative history clearly shows that Congress intended just the opposite. The Secretary's actions in this regard were not arbitrary and capricious.