**The NATURIST SOCIETY, INC., and T.A. Wyner, Plaintiffs,**

v.

**John FILLYAW, Defendant.**

**No. 89–8130–CIV–JAG.**

United States District Court,
S.D. Florida,
Fort Lauderdale Division.

May 4, 1990.

James K. Green and W. Trent Steele, W. Palm Beach, Fla., for plaintiffs.

Martha C. Olive, Parker, Skelding, Labasky & Corry, Tallahassee, Fla., for defendant.

GONZALEZ, District Judge.

## FINAL ORDER

THIS CAUSE has come before the court upon the cross-motions for summary judgment filed by the Naturist Society, Inc. and T.A. Wyner, the plaintiffs (collectively, Wyner); and John Fillyaw (Fillyaw), the defendant. The motions have been fully

briefed and the court heard oral argument of able counsel at the hearing of April 13, 1990.

The Naturist Society, Incorporated is a Wisconsin corporation that promotes "social nudism". Ms. T.A. Wyner is a Florida resident who has belonged to the Society as a member since 1987. The Society meets as both a local and national organization several times a year. The members pay dues of approximately $25 and receive a publication advocating the Society's ideals. The group comprises both individual and family members, including children. The Naturists and Ms. Wyner advocate their clothing-optional lifestyle by educating the public through writings, lectures, and public demonstrations.

John Fillyaw has been sued in this case as an individual and in his capacity as park manager of the John D. MacArthur Beach State Park (the beach), a property in Palm Beach County owned by the State of Florida. In his official capacity, Fillyaw is charged with enforcing the rules and regulations promulgated by the Florida Department of Natural Resources as part of the Florida Administrative Code.

The park was once named the Air Force Beach when it was owned by John D. MacArthur. The plaintiffs contend that the property contains approximately 1.8 miles of beach and that it is not visible from the main road leading to the park. Fillyaw has denied that these are the correct dimensions of the park, but has submitted a map of the beach which appears to corroborate the plaintiffs' suggested mileage and the secluded nature of the beach. *See* Court Exhibit A (attached to this order). Although the parties dispute this fact, there is some evidence that there were traffic problems prior to the state's acquisition of the park. It is not clear, however, that this was attributable to overcrowding or simply inadequate parking since the parties have not provided a description of the park or the parking lot for that time period.

Prior to the state's acquisition, the north end of the beach was used by naturists who visited it in the nude or with minimal clothing. The parties dispute whether Mr. MacArthur himself supported "social nudism".

On June 29, 1988, the plaintiffs contacted Fillyaw and announced their desire to demonstrate at the beach to celebrate National Nude Weekend and to advocate their position that the north end of the beach should be designated clothing-optional. After their discussion, Wyner wrote Fillyaw a letter dated July 14, 1988. *See* Exhibit B.

The plaintiffs requested permission for several activities at their demonstration, but did not request a specific time of day nor length of time. Although Wyner was apparently dissatisfied with the time limitations eventually established by Fillyaw, she did not express her concern and agreed to the designated time.

The Naturists asked to distribute literature to the park's visitors by approaching them on and off the beach. Further, they sought to display a banner or sign measuring four feet by two feet containing the phrase "Sunnier Palms". The group also sought to circulate a petition for visitor signatures and to display an exhibit of "sculpture depicting the human body". These sculptures are body casts made from plaster of paris. At least one exhibit would have been of a life-size female including anatomically correct genitalia. There would also have been a male sculpture, but without a depiction of the sexual organs. Finally, the group sought Fillyaw's permission to appear in the nude or with minimal clothing. Wyner herself desired to wear only a G-string. She had not previously appeared at the park in the nude or with only a G-string.

Parenthetically, it is noted that subsequent to the filing of this lawsuit, the plaintiffs have expressed their intention through various motions and memorandums filed herein to conduct other activities at the park. They now say they wish to display additional banners and signs containing the phrases "American Sunbathing Association" and "This is Nudist Country", and to use sound amplification to promote their message. They also intend to limit their personal solicitations of park visitors. According to Wyner, the group desires to

approach persons on the beach, but alleges that they would first obtain permission from a distance of at least six feet before they would come closer and that they would promptly leave if the beachgoer so requested. Finally, the Naturists wish to display written messages on their clothing. This last request is unusual in light of the group's desire to appear sans clothing or with only minimal apparel since it is obvious that the space available for these messages must be extremely limited.

In any case, the court will not consider these new factual matters. They are not contained in the amended complaint filed on March 30, 1989 and the plaintiffs have not moved for leave of court to file a further amended pleading. Moreover, as to these new facts, there is no case and controversy. The Naturist's intention to engage in these activities was never expressed to Fillyaw prior the date of the original proposed demonstration. Whether Fillyaw would approve or reject these activities is, therefore, sheer speculation.

As to the original allegations, Fillyaw, by letter dated July 22, 1988, wrote to Wyner. *See* Exhibit C (attached). In summary, he stated his intention to allow the group to demonstrate subject to a number of conditions. A permit was issued for the demonstration.

On Saturday, July 9, 1988, in accordance with the permit, the Naturists appeared at the park and demonstrated. Approximately thirty persons attended. They were limited to a fixed location with a card table, approximately one hundred yards north of the park's entrance. They handed out literature to interested persons from the hours of 10 a.m. to 1 p.m. The plaintiffs have not filed a copy of any literature actually distributed. Wyner claims that she wanted to include a message in the literature that the beach's former owner, John MacArthur, was a "nudist". However, she chose not to do so because of the warning in Fillyaw's letter. *See* Exhibit C at page 2.

At the demonstration, Ms. Wyner was fully attired in a long dress and there is no allegation that the group appeared nude. The group did not bring signs, banners, artwork, or petitions because of the limitations imposed by Fillyaw. There is no evidence of how many visitors stopped at the demonstration, but Wyner complains that the location was out of the normal flow of crowd traffic between the beach and the parking lot.

Subsequent to the demonstration, the plaintiffs have not reapplied for either a modification of the park manager's conditions or a new permit to appear in the park for another demonstration. Wyner states she desires to engage in the prohibited activities in a future demonstration, but claims she cannot do so because of fear of arrest and prosecution.

The defendant also has offered new factual allegations arising since the commencement of this case. First, at the direction of Joseph Knoll, the Director of the Division of Recreation and Parks (Department of Natural Resources), Fillyaw has designated a site at the beach for the exhibition of displays and signs and the distribution of literature. The area's measurements are fifteen feet square and it is located at one end of the parking lot, reasonably near the "Nature Center", restrooms, and a pedestrian walkway. *See* Exhibit A. Second, the defendant has filed with the court a set of revised regulations drafted by the state, but not yet adopted. For the same reasons stated above in regards to the plaintiffs' new allegations, this court declines to consider these facts. They are not within the pleadings. Further, the proposed revisions are not yet in effect, and no definite time has been set for their adoption. This court, therefore, does not deem any of the plaintiffs' claims to be moot.

The Naturists have filed a four-count amended complaint requesting damages and declaratory relief. The court previously denied the plaintiffs' motion for a preliminary injunction by order dated August 10, 1989. Because of the lack of factual development at that time and because of the preliminary nature of the relief sought, this order supercedes the August 10 ruling and represents the court's disposition on the merits of this case.

Count I of the amended complaint alleges that Florida Administrative Rule (Rule) 16D–2.004(1)(e) is unconstitutional, on its face and as applied to the plaintiffs, because of vagueness and overbreadth. The Naturists claims that the rule and its application infringes their right to expressive dress. The rule provides: "In every bathing area all persons shall be clothed so as to prevent any *indecent exposure* of the person. All bathing costumes shall conform to *commonly accepted standards* at all times." (emphasis added).

Count II challenges the constitutionality, both facially and as applied, of Rule 16D–2.007(1)(a)–(1)(h) which provide, in pertinent part, as follows:

(a) The sale or distribution of printed matter is permitted within the park areas, provided a permit to do so has been issued by the manager and provided further that the printed matter is not solely commercial advertising.

(b) Any application for such a permit shall set forth the name of the applicant; the name of the organization, if any; the date, time, duration, and location of the proposed sale or distribution; and the number of participants.

(c) The manager shall, without unreasonable delay, issue a permit on proper application unless: (1) a prior applicant for a permit for the same time and location has been or will be granted and the activities authorized by that permit do not reasonably permit multiple occupancy of the particular area; (2) the sale or distribution will present a clear and present danger to the public health or safety; (3) the number of persons engaged in the sale or distribution exceeds the number that can reasonably be accommodated in the particular location applied for; (4) the location applied for has been designated as available for the sale or distribution of printed matter; (5) the activity would constitute a violation of an applicable law or regulation. If an applicant for a permit is denied, the applicant shall be so informed in writing, with the reason(s) for the denial clearly set forth.

(d) The manager shall designate on a map, which shall be available for inspection in the Office of the Manager, the locations within the park area that are available for the sale or distribution of printed matter.

(e) The permit may contain such conditions as are reasonably consistent with protection and use of the park area.

(f) No permit shall be issued for a period in excess of 14 consecutive days, provided that permits may be extended for like periods, upon a new application.

(g) Persons engaged in the sale or distribution of printed matter under this section shall not obstruct or impede pedestrians or vehicles, harass park visitors with physical contact or persistent demands, misrepresent the purposes of affiliations of those engaged in the sale or distribution, or misrepresent whether the printed matter is available without cost or donation.

(h) Sale or distribution of printed matter without a permit, or in violation of the terms or conditions of a permit is prohibited.

The plaintiffs allege that this rule and Fillyaw's application of it illegally abridges their right to solicit park visitors by approaching them on the beach and to distribute literature in person. The Naturists also allege that the ban on the display of banners and signs is unconstitutional. However, the regulation dealing with banners and signs is apparently named under Count IV, not Count II, of the amended complaint. Nonetheless, because the complaint reasonably gives notice of the basis for this claim, the plaintiffs' objections to the ban on banners and signs shall be considered under both counts.

Rule 16D–2.007(2) is the subject of Count III. The plaintiffs claim this statute, on its face and as applied by Fillyaw, is unconstitutional. The rule states:

Persons in any park who are intoxicated or who conduct themselves in a disorderly, *offensive, obnoxious, obscene or profane* manner are considered public nuisances and are subject to arrest and ejec-

tion from the park. *Common moral decency* is the criterion for determining such public nuisance. No persons shall abuse the facilities of the park or disregard such rules. (emphasis added).

The basis for the claim against Fillyaw is the statement in his letter of July 22, 1988 that the Naturists should not call John MacArthur a "nudist" as they would be "opening themselves up" for a libel action. The plaintiffs also object to Fillyaw's prohibition on the use of petitions in the park. In this regard, subsection 5 of this rule provides that, "No person shall solicit contributions or alms for any purpose nor shall any person circulate petitions of any kind in parks."

Finally, Count IV alleges that Rule 16D–2.008(1) is unconstitutional, on its face and as applied, in that the plaintiffs were not allowed to display their art exhibit or signs and banners at the demonstration. The rule provides as follows:

No person shall expose or offer for sale any article or material, nor shall he place any stand, cart or vehicle for the transportation, sale or display of any such article or material within any park.

. . . .

(2)(a) No person shall use park roadways or enter any park for the purpose of announcing, displaying advertising, or calling attention to any person, political party, religious institution or sect, or meeting or assembly thereof, or for the purpose of advertising any item or service for sale; nor shall displays of any form be used for such purposes; no person place on any public land or roadway adjacent to any park or any vehicle whatsoever displaying such advertising or used for sales.

(b) No person shall distribute, display or affix to any property any printed materials advertising any event within any park or roadway adjacent thereto.

(c) No person shall make any display or exhibit of any kind or carry on any performance or do anything which will cause numbers of persons to congregate to the interference or obstruction to pedestrian and vehicular traffic or

to any other proper purpose of the park.

The defendant Fillyaw has raised the affirmative defense of qualified immunity. Counts II, III, and IV seek an award of damages against him in his individual capacity.

The plaintiffs' first contention is that certain of the rules are facially vague. Under Count I, the objectionable language in Rule 16D–2.004(1)(e) is the terms "indecent exposure" and "commonly accepted standards". The Naturists also challenge the following phrases in Count III as contained in Rule 16D–2.007(2): "offensive, obnoxious, obscene or profane" and "[c]ommon moral decency". The argument is that the language does not give the notice required by the Due Process Clause of the Fourteenth Amendment and that the Department of Natural Resources has not established sufficient minimum guidelines to limit the unfettered discretion of the beach's manager.

■ Vagueness challenges in the First Amendment context have a special meaning. Overly general or ambiguous statutes can chill the exercise of free expression because the potential speaker is unclear as to the scope of prohibited expression and chooses, therefore, to forego all speech. A statute is constitutionally infirm if persons of common intelligence must necessarily guess as to its meaning and differ as to its application. *See Connally v. General Construction, Co.*, 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926).

■ Although the objectionable phrases are very general, the Naturists' challenge must fail. Even if a statute is facially vague, its legality is merely voidable, not void. A narrowing construction placed on it by the Executive or Judicial branches of government can preserve its constitutionality. *See Ward v. Rock Against Racism*, — U.S. ——, 109 S.Ct. 2746, 2756, 105 L.Ed.2d 661 (1989). Here, Fillyaw gave the plaintiffs specific notice of the exact reach of the rules. He stated in his letter to Wyner that, "G–Strings, Pasties, Socks [for covering male genitalia]" would not be allowed. The letter also explicitly stated that the "legal limit would be French-cut

bikinis and/or thongs." This construction eliminates the vagueness and defeats both the facial and as applied prongs of the Naturists' argument.

■ The next contention raised by the plaintiffs is that Rule 16d–2.004(1)(e), on its face and as applied by Fillyaw, is unconstitutional for overbreadth.

■ When the government attempts to regulate activities within the scope of its constitutional power, it may not use unnecessarily broad statutes or rules which impact upon protected liberties such as the right to free expression protected by the First Amendment. A plaintiff may claim a law is unconstitutional as applied in the party's particular case. Furthermore, even if the plaintiff's rights were not infringed, he may raise the facial validity of the statute or rule if it unnecessarily violates the rights of third parties not before the court. To this extent, the traditional rules of standing are relaxed to prevent an overbroad law from becoming a de facto prior restraint on free speech.

■ However, this relaxation is not limitless. The judicial role is not to cull the statute books looking for laws which have some possible unconstitutional application. *See Broadrick v. Oklahoma,* 413 U.S. 601, 611–12, 93 S.Ct. 2908, 2915–16, 37 L.Ed.2d 830 (1973). Rather, the overbreadth must be both real and substantial. *Id.* at 615, 93 S.Ct. at 2917. A statute or rule is not invalid where its' "margins" infringe First Amendment rights if the "remainder of the statute ... covers a whole range of easily identifiable and constitutionally proscribable ... conduct." *Osborne v. Ohio,* — U.S. —, —, 110 S.Ct. 1691, 1697, 109 L.Ed.2d 98 (1990) (citing *New York v. Ferber,* 458 U.S. 747, 770 n. 25, 102 S.Ct. 3348, 3362 n. 25, 73 L.Ed.2d 1113 (1982)). Further, the fact that "one can conceive of some impermissible applications of a statute is not sufficient to render it susceptible to an overbreadth challenge." *City Council v. Taxpayers for Vincent,* 466 U.S. 789, 800, 104 S.Ct. 2118, 2126, 80 L.Ed.2d 772 (1984).

The Naturists claim that Rule 16D–2.-004(1)(e) and Fillyaw's application of it infringed both their right to appear nude and in minimal clothing such as G-strings at the beach. To the extent the plaintiffs' rights were not violated, they also seek to raise the rights of third parties to expressive dress.

The primary import of the rule here as well as the guidelines listed in Fillyaw's letter were to delineate the limits of acceptable bathing outfits. The fact that the rule and its application have an incidental impact upon the First Amendment does not eliminate the law's focus upon regulating conduct, not speech.

In determining if the rule and its application is impermissibly overbroad, the court must consider whether the activity is a legitimate subject of governmental regulation and if a substantial amount of protected liberty would be infringed by the breadth of the law's language. As to the first inquiry, the government has a legitimate interest in regulating a person's dress or lack thereof when visiting a public beach. In the First Amendment context, the Supreme Court has observed that "States have a greater power to regulate nonverbal, physical conduct than to suppress oral or written descriptions or depictions of the same behavior." *Miller v. California,* 413 U.S. 15, 26 n. 8, 93 S.Ct. 2607, 2616 n. 8, 37 L.Ed.2d 419 (1973). This Circuit has explicitly held that the state has a legitimate interest in proscribing all public nudity at beaches. *South Florida Free Beaches v. City of Miami,* 734 F.2d 608, 610 (11th Cir.1984). Further, even though the plaintiffs may have a liberty interest in appearing with minimal clothing such as G–Strings, the state can regulate this right as long as due process under the Fourteenth Amendment is preserved. *See Deweese v. Town of Palm Beach,* 812 F.2d 1365, 1367 (11th Cir.1987) (liberty interest in personal dress is constitutionally protected under the due process clause).

■ The second inquiry is whether the rule and Fillyaw's use of it infringe upon a substantial amount of a protected liberty. The answer is clearly in the negative. As noted by the citation of the above

authorities, public nudity alone has no First Amendment protection. Appearing without clothing, when not combined with other expressive conduct such as dancing, is not speech under the Constitution. To the extent it is protected under the Fourteenth Amendment, the state of Florida has shown a rational relationship between the rule and Fillyaw's actions and the state's legitimate interests in banning this conduct. In *Deweese*, the court held that a statute prohibiting persons from appearing in downtown West Palm Beach, Florida without a garment covering the upper portion of their body was invalid. The holding was that the statute violated the due process rights of a male shirtless runner because it was not rationally related to any legitimate governmental interest. Interestingly, the statute exempted beach attire, but prohibited females from appearing topless in any public place. *Id.* at 1365 n. 1. Further, the court did not suggest that there was not a legitimate governmental interest in regulating lewd, indecent, or offensive behavior. *Id.* at 1367 n. 6, 1368 n. 7. Because nudity has no First Amendment protection, the state can rationally require a minimum amount of clothing to protect interests such as the prevention of possibly offensive displays of human genitalia and the protection of minors from exposure to such sights. *See Osborne v. Ohio*, —— U.S. ——, ——, 110 S.Ct. 1691, 1696, 109 L.Ed.2d 98 (1990) ("It is evident beyond the need for elaboration that a State's interest in 'safeguarding the physical and psychological well-being of a minor' is 'compelling.'"). The state here could rationally conclude that displays of human genitilia on a beach could be both offensive to members of a family and possibly damaging to the growth of an observing child. *See* Deposition of George Apthorp, docket entry # 164, at 11, 12, 15, 16 (state's concern with managing park's for families). Furthermore, as shall be discussed below, there are other legitimate interests impaired by displays of nudity including disruption of the beach's normal activities that could rationally be related to regulating such conduct.

Further, the rule and Fillyaw's restrictions do not suppress any substantial rights to expressive dress. For any conduct including how one dresses to be protected by the First Amendment, it must be expressive or symbolic. *See e.g. Tinker v. Des Moines School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (wearing of black armbands expressed protest of the Vietnam War). Conduct is sufficiently communicative to constitute speech under the First Amendment if there is proof of two elements: (1) a subjective intent by the speaker to convey a particular message through the conduct and (2) a great likelihood that the message would be understood by those perceiving it. *See Texas v. Johnson*, —— U.S. ——, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342 (1989). Even if the plaintiffs intend to advocate a clothing optional lifestyle by appearing on the beach in G–Strings, pasties, and socks, the court finds, as a matter of law, that there is not a *great* likelihood that other beach patrons would understand this message. Indeed, because of the de minimus amount of clothing to be worn, the court is hard pressed to find any expression at stake other than promotion of the nude body. The plaintiffs apparently recognized this dilemma when they raised the new argument that they desired to include verbal messages on their beach attire. However, as noted above, this argument is both untimely and unpersuasive. Indeed, there is a great likelihood that non-Naturist beach visitors would not even be able to see, much less understand, the almost microscopic message contained on a G-string. The same analysis would also apply to the rights of third parties visiting John D. MacArthur beach in light of Fillyaw's allowance of French-cut bikinis and thongs. This court can take judicial notice of the fact that such beachwear completely exposes the buttocks with coverage of only the frontal genitalia. The rights of third parties to wear clothing falling between the size proposed by Fillyaw and the Naturists are minimal.

Therefore, in light of the government's prerogative to legislate in this area and the nonsubstantial nature and insignificant amount of rights potentially infringed, the

court must reject the overbreath claim in Count I of the amended complaint.

Counts II through IV reach issues closer to the heart of the First Amendment's protection; namely, whether the rules and Fillyaw's application of them to the plaintiffs at the July 9, 1988 beach demonstration violated the constitutional right of free speech.

■■ Speech, whether written, spoken, or expressive conduct, is subject to reasonable time, place, and manner regulation. If there is one issue settled in First Amendment law, it is that the Constitution's protection of freedom of expression is not absolute. Certainly the Framers placed high importance on this liberty and especially political speech as demonstrated by the Amendment's position in the Bill of Rights. Nevertheless, the primacy of free speech must be balanced against the inherent right of government to rule, and the fact that each of the later amendments to the Constitution affected the preceding amendments as well as the body of the Constitution.

■■ The degree of judicial scrutiny of laws affecting speech depends initially upon whether the government is regulating the content of the message through the type of subject matter discussed or the viewpoint advocated or, rather, whether the aim is to regulate conduct with only an incidental impact upon expression. In this case, the issue is whether Fillyaw's permit restrictions and the rules themselves were based on the plaintiffs' advocacy of a clothing optional lifestyle or the consideration of the topic of social nudism.

Reviewing the rules in this case indicates that they are not based upon the content of the speaker's message. The rule named in Count II requires demonstrators at the beach to first obtain a permit and it establishes guidelines for distribution of literature. Subsection 2.007(1) allows literature distribution as long as it is not solely commercial advertising and the distributor obtains a permit. On its face, there is no discrimination among viewpoint or subject matter aside from a ban on literature with only commercial content. The latter limita-

tion is immaterial as the handbills in this case were of a noncommercial nature. Subsections (b) through (f) deal with the following content-neutral matters, respectively: the requirement that a permit issue upon application unless at least one of six exceptions is applicable, the requirement that the park designate the area for distribution on an accessible map, the allowance for additional conditions imposed by the manager consistent with the nature of the particular park, and the time limitations on the permit. Finally, subsection (g) provides that all "persons" distributing literature cannot "obstruct or impede pedestrians" or "harass park visitors with physical conduct or persistent demands". The court has sought in vain to discover any content censorship inherent in these regulations.

The same result is true of the rules challenged in Counts III and IV. Rule 2.007(5) prohibits any "person" in the park from circulating petitions "of any kind". It is beyond dispute that a total ban does not discriminate based on the petition's message. Rule 2.008(2)(a) and (2)(c) state that "[n]o *person* shall make *any* display or exhibit of *any* kind" to "announc[e], display advertising, or call[ ] attention to *any* person, political party, [or] religious institution or sect." (emphasis added). As before, this rule bans all signs, banners, and art exhibits regardless of the identity of the speaker, the nature of the display, or the idea sought to be portrayed.

The Naturists contend that even if the statutes are facially valid, that the restrictions imposed by Fillyaw were based upon the advocacy of a clothing optional lifestyle. The plaintiffs seize upon the following language in Fillyaw's letter: "We cannot [sic] tolerate the actions of a few persons or groups to upset or destroy the harmony that our visitors have come to enjoy in Florida State Parks." *See* Exhibit C. The plaintiffs are not as quick to refer to the first part of the next sentence, which reads, "We welcome you and your group and hope that you do visit and enjoy our parks". *Id.* In addition, the Naturists claim that Fillyaw testified in his deposition

that he was personally opposed to public nudity.

■ Neither allegation is persuasive. As to what Fillyaw said in pretrial discovery, the court cannot determine since the plaintiffs failed to file his deposition with the court. *See* Federal Rule 56(e) (filing of depositions for consideration on motions for summary judgment); S.D.Fla. L.R.C. 10(I)(2) and (3) (same). Even assuming that Fillyaw's personal opinion is adverse to the plaintiffs' beliefs, this is not sufficiently probative to create a genuine issue of fact. When an official's actions are consistent with governing rules and statutes, a party alleging that the official is censoring speech based upon content cannot rely solely upon the official's personal opposition to the speaker's subject or viewpoint to support an inference that the restrictions imposed on the speaker's impression by the official were content based. In addition, the cited language in Fillyaw's letter is irrelevant. It does not mention public nudity. Rather, the defendant is merely expressing his view that the park is to be managed for everyone's benefit.

The Naturists also rely upon two prior incidents at the beach to prove Fillyaw's restrictions were not content neutral. The first event occured in 1985. Members of an organization known as Florida Free Beaches handed out sun visors to the park's visitors including persons on the beach. The visors allegedly contained messages urging support of beach bonds. The plaintiffs allege that this occured in the presence of a park ranger who did not restrict either the distribution of the visors or the solicitation of persons on the beach. Once again, however, there is no genuine issue of fact. The Naturists have presented no evidence that the Fillyaw knew the visor distribution was going to occur or that he was present. Without knowledge or presence, Fillyaw could not have consented to this demonstration or discriminated based on the visors' message. The plaintiffs also rely upon a second event involving the filming of a television show on the beach. The court presumes that Fillyaw did know about this occurrence since he apparently issued a permit for it. However, this filming is not material to this litigation. There is simply no showing that Fillyaw allowed the film's producers to solicit beach patrons or engage in any other First Amendment activity beyond that allowed to the Naturists at their demonstration.

Because the rules in this case were not drafted or applied with any reference to the content of the plaintiffs' message, this court does not have to decide whether the procedural protections outlined in *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), are applicable.

The analysis now turns to the test outlined in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). For a content-neutral regulation of the time, place, and manner of speech, Fillyaw must prove that the rules were within the government's constitutional power; that the regulation furthers an important or substantial governmental interest and that the incidental restriction on free expression is no greater than necessary to further that interest. *Id.* at 377, 88 S.Ct. at 1679; *Texas v. Johnson*, —— U.S. ——, 109 S.Ct. 2533, 2540-41, 105 L.Ed.2d 342 (1989) (recognizing continued vitality of *O'Brien*'s "less demanding rule" when the governmental interest is unrelated to the suppression of speech).

The first element is not in dispute in light of these types of regulations and the fact that the beach is owned by the state.

As to the second element, Joseph Knoll, Jr., the Assistant Director of the Division of Recreation and Parks within the Florida Department of Natural Resources, has filed an affidavit listing three interests furthered by the rules at issue here. The first interest is the state's need to manage its own property. According to Knoll, the purpose of the permit requirement and the restrictions on literature distribution are necessary

> to provide a method whereby park officials can be put on notice of a planned demonstration, protest or exhibition so that the appropriate management measures can be taken to prevent undue [sic]

disturbances and the disruption of park operations. It further allows park officials to coordinate between potentially conflicting uses of the park to insure the maximum and proper use of the facility to each individual and group.

The state's second interest is preservation of the park's aesthetics. Knoll notes that his agency wishes "to preserve the natural beauty of our landscape for the enjoyment of our citizens and tourists." The final interest enunciated by the state is the goal of providing a "unique recreational experience based on the natural environment; an experience different from that traditionally offered by commercialized recreational sites."

Each of the state's three interests can be classified as both substantial and important. The state owns the John D. MacArthur beach with the right to manage it and use it to assure the site's availability for its primary purposes; in this case, as a beach. *See Cox v. New Hampshire [Cox I]*, 312 U.S. 569, 61 S.Ct. 762, 85 L.Ed. 1049 (1941) (government has a right to require a permit for parades on public streets to provide advance notice to plan for proper policing and to prevent confusion by overlapping events). In *Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 296, 104 S.Ct. 3065, 3070, 82 L.Ed.2d 221 (1984), the Supreme Court held that the federal government had a "substantial interest in maintaining the parks in the heart of our Capital in an attractive and intact condition, readily available to the millions of people who wish to see and enjoy them by their presence." The plaintiffs attempt to distinguish this case on the basis that the demonstrators there sought to camp in the park grounds and the Court was only concerned with the importance of the parks in the nation's capital city. This court finds these alleged distinctions without significance. The state of Florida no less than the federal government has an important interest in protecting its own property. Indeed, a very significant portion of Florida's economy is sustained by tourist visits attracted in large part by the state's natural resources including its beaches.

The state also has a substantial interest in preserving peaceful and tranquil settings for all to enjoy. *See Ward v. Rock Against Racism*, —— U.S. ——, 109 S.Ct. 2746, 2757, 105 L.Ed.2d 661 (1989) ("The city enjoys a substantial interest in ensuring the ability of its citizens to enjoy whatever benefits the city parks have to offer, from amplified music to silent meditation."). Of lesser importance but still not insubstantial, the state has a right to protect the beach's natural beauty. In *City Council v. Taxpayers for Vincent*, 466 U.S. 789, 806, 104 S.Ct. 2118, 2129, 80 L.Ed.2d 772 (1984), the Supreme Court recognized that government has a "weighty, essentially esthetic interest in proscribing intrusive and unpleasant formats for expression." The plaintiffs are correct that this interest has not been broadly interpreted in the past. *See Metromedia, Inc. v. San Diego*, 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (five separate opinions on case involving government's reliance on esthetic interest in regulating billboards on public property); *Schneider v. State*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939) (city's ban on all distribution of leaflets to prevent littering held unconstitutional). Nonetheless, in dealing with a property such as a beach which has natural beauty as its prime characteristic, the court declines to find this interest insubstantial or unimportant.

The last element of the *O'Brien* test requires a close review of the facts in this case. In dealing with regulations which are designed to affect conduct, but have an incidental impact upon speech, the court must consider the fit between the interests at stake and the means chosen by the state to protect them. Although the impact upon protected rights should be no greater than necessary, the government is not required to use the regulation that least impacts constitutional rights. *See Ward v. Rock Against Racism*, —— U.S. ——, 109 S.Ct. 2746, 2757–58, 105 L.Ed.2d 661 (1989) ("Lest any confusion on the point remain, we reaffirm today that a regulation ... must be narrowly tailored ... but that it need not be the least-restrictive or least-intrusive means of doing so."). All that is

required is that the rules be narrowly tailored to protect the state's interests and accomodate the exercise of protected liberties.

It is also important to consider the nature of the forum to determine if the restrictions are no greater than necessary. *See Heffron v. Int'l Soc. for Krishna Consc.*, 452 U.S. 640, 650–51, 101 S.Ct. 2559, 2565–66, 69 L.Ed.2d 298 (1981) ("[C]onsideration of a forum's special attributes is relevant to the constitutionality of a regulation since the significance of the governmental interest must be assessed in light of the characteristic nature and function of the particular forum involved."). As enumerated in *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983). There are three categories of forums under the First Amendment. The first is the traditional public forum such as the townsquare which has been historically associated with the exercise of free speech. *See Hague v. Committee for Industrial Organization*, 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939) (parks and streets have been "immemorially ... held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions"). The second category is those public properties opened by the state for all to use for the specific purpose of furthering free speech. *See e.g. Heffron*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (state fair). While these two categories are not subject to broad regulation in light of the strong concern for free speech inherent in the forum, there are different considerations governing the last type of forum. The third category is the nonpublic forum in which the property is open for the public's use for a public purpose, but there is no guaranteed right of access for free expression. *See Hazelwood School Dist. v. Kuhlmeier*, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (high school newspaper); *United States v. Grace*, 461 U.S. 171, 103 S.Ct. 1702, 75 L.Ed.2d 736 (1983) (U.S. Supreme Court building); *Greer v. Spock*, 424 U.S. 828, 96 S.Ct. 1211, 47 L.Ed.2d 505 (1976) (Army base); *Adderley v. Florida*, 385 U.S. 39, 87 S.Ct. 242, 17 L.Ed.2d 149 (1966) (jail); *Cox v. Louisiana [Cox II]*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965) (courthouse). Even in nonpublic forums, however, it is doubtful that government can ban all speech. *See Airport Com'rs of Los Angelos v. Jews for Jesus*, 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987) (ban on all "First Amendment activities" within central terminal of international airport held unconstitutional). But, it is established that the government can act to preserve the property for its intended use. *See e.g. Adderley*, 385 U.S. at 47, 87 S.Ct. at 247 ("The State, no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated."). Also, if the nonpublic forum is opened for a limited exercise of free speech, the government cannot discriminate based on content. In judging the constitutionality of speech restrictions in a nonpublic forum, regulations are valid if they are "reasonable in light of the purpose which the forum at issue serves." *Perry*, 460 U.S. at 49, 103 S.Ct. at 957. In determining what is "reasonable", the Supreme Court has emphasized that "The crucial question is whether the manner of expression is basically incompatatible with the normal activity of a particular place at a particular time." *See Grayned v. Rockford*, 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972).

It is important to emphasize that Fillyaw did not ban all speech in this case. Rather, he channeled the plaintiffs' expression to a fixed location. The Naturists were allowed to speak at this site which was apparently large enough for a group of at least thirty demonstrators to congregate. By the terms of their permit, the plaintiffs were allowed to advocate their clothing optional lifestyle by soliciting interested individuals walking to and from the beach and they were also allowed to distribute literature. There is no evidence in this record that any other group speaking on different topics or taking an anti-nudism view was granted a permit on more favorable terms.

■ The plaintiffs allege that the permit requirement was an unreasonable prior restraint. As this court found above, both the rule and its application by Fillyaw were not based upon the content of the plaintiffs' message. It is undeniable that the manager of a park must have advance notice of a demonstration to make appropriate plans to control potential problems. For example, depending upon the anticipated number of persons expected to attend, Fillyaw has to know if he will need extra police officers for crowd control and to prevent destruction of the premises, additional trash receptacles and bathroom facilities, and extra parking. The application for the permit serves this need. Further, the permit itself allows Fillyaw to identify who is allowed to conduct the demonstration and who can be contacted by him to obtain any extra information for planning. As a matter of practicality, the park manager must be able to coordinate any planned demonstrations with other planned uses of the park to protect the premises and allow its best use by all persons. The Supreme Court noted a similar concern in the case of *Cox v. Louisiana [Cox I]*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965):

> The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of an anarchy. *Id.* at 554, 85 S.Ct. at 464.

Fillyaw has voiced the same concern here. The plaintiffs claim that the permit requirement allows the park manager to exercise unbridled discretion. They use the example that Fillyaw could use the multiple occupancy or excessive persons provisions in subsections (1) and (3) of Rule 2.007 to allow one group to appear if he agreed with its goals, but exclude individuals wishing to appear to oppose this group. However, there is nothing unreasonable in limiting large demonstrations on any given date

to just one viewpoint if this group was the first to apply for the permit and the park is not capable of accommodating a second demonstration at the same time. The plaintiffs suggest the case when both an anti-abortion and a pro-choice group seek a permit to appear at the same time in the park. Fillyaw persuasively rebuts any appearance of content discrimination by noting considerations of effective park management. The fact remains that the plaintiffs in this case were granted a permit without undue delay and that there is no proof that another demonstration could not be held if the Naturists would merely submit an application.

■ The court also finds the defendant's limitation of the demonstration to a fixed location to be reasonable. Furthermore, personal solicitation of the park's visitors on the beach would be incompatible with the property's primary purpose.

To a significant degree, visitors using this park are a captive audience. To state the obvious, John D. MacArthur park is a beach. Persons visit such a place for its recreational features. Visitors can swim and play games or merely rest under the sunshine, enjoying the natural beauty of the scenary. This park is also not particularly large, measuring less than two miles in length. The Naturists are correct that persons waive most of their privacy rights when they go to public places. However, this waiver is not absolute. The primary purpose of a public beach is to provide a place for public relaxation and recreation, whether active or restful. Unlike a public street or city park, beach visitors do not reasonably expect to be subjected to the full exercise of others' rights of free speech while at a public beach. A person lying on the sand seeking a sun tan does not expect to be approached and engaged in a discussion of topics which they may find disturbing or offensive or to which they are indifferent. If the plaintiffs had their way, they would be able to distribute literature to individuals lying on the beach. Beach visitors could well accept the literature in the hope of being let alone in which case the literature would then have to be

discarded in an appropriate waste receptacle. Further, unlike a park or street, the beach visitor cannot easily walk away. Some persons may feel more vulnerable when they lie on a beach without their normal amount of clothing. They often lie on the beach on a blanket or sit in a chair, arranging their possessions around themselves and setting out various objects such as drinks, a radio, and lotion. To require the beach visitor to leave every time a speaker approached or persisted in his solicitation would impose a significant burden on the use of the park. The park patron also has few ways to protect his privacy. He cannot easily post "Do Not Disturb" or "No Solicitors" signs in the sand or refuse to answer a nonexistent doorbell when the solicitor comes visiting. Fillyaw makes the related argument that the park has a limited number of enforcement officers to police the beach making it very difficult to deter and punish abuses by solicitors harassing beach visitors. By limiting demonstrations to a fixed location, the park manager is able to accomodate the interest in free speech and also protect the privacy of the beach's patrons. *Cf. Martin v. Struthers*, 319 U.S. 141, 63 S.Ct. 862, 87 L.Ed. 1313 (1943) (invalidating ordinance prohibiting distribution of handbills to residences since homeowner can indicate his nonconsent with signs and police can punish those who call at a home in defiance of previously expressed will of the occupant). Without any protection by the state, the beach patron may decide to leave and not return or forego visits to the beach entirely. While this result might not be objectionable in a public forum such as a townsquare, the state has a stronger interest in protecting privacy rights of individuals on its beach. In sum, although there is a right to speak in public, there is also a right to be left alone.

██ The same result is true of the ban on the plaintiffs' petitions, signs, banners, and artwork. The court is certainly concerned with any regulation that totally forecloses a particular format of expression. Petitions are unintrusive and represent the speech of both the petitioning party and the person who endorses his signa-

ture. Signs and banners have a valuable role to play in promoting the exchange of ideas. While there is a limit on how much information can be relayed in this type of format, the court is aware of the sign's role as a method of attracting attention and as a means of emphasizing memorable phrases or pictures. Signs and banners also may reach a larger crowd that handbills. Finally, the value of art in depicting concepts and ideas is both powerful and unique. There is truth to the well known saying that a picture is worth a thousand words. Pictures and sculptures can sometimes convey a message that would not be as easily received or experienced if expressed verbally. Indeed, this is one of the functions of the plastic arts.

Nonetheless, the court must consider the ban of these particular types of expression in light of all the facts in this case. If the plaintiffs have a reasonable and adequate opportunity to exercise their free speech rights, the law does not require that they be allowed to use every means possible. Also, the scope of access which the state must give to any particular type of speech is more limited in a nonpublic forum. The plaintiffs chose this setting and they should not be heard to complain if the manner of their speech is limited.

Wyner did assert in her deposition that the fixed location was out of the flow of pedestrian travel. However, without more factual development, this sole fact fails to create a genuine issue that the plaintiffs did not have an adequate chance to advocate a clothing optional lifestyle. There is no evidence in this record that the location caused an unreasonably low attendance by visitors or that the location was obscured from view of most patrons. If the regulations are designed and applied to make the demonstration accessible to the average beach visitor, the park is not required to designate the best possible location. Moreover, the Naturists could have exercised creativity to relay their message in other ways to compensate for their inability to use signs, petitions, or artwork. For example, the demonstrators only sought to display a small sign. They could have used T-shirts to convey the same idea. Assuming a significant number of demonstrators,

the message could have reached a larger audience.

This court also finds the case of *Heffron v. Int'l Soc. for Krishna Consc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981), controlling. There the Court upheld a reasonable time, place, and manner regulation limiting the distribution and sale of literature and the solicitation of funds at a state fair to a duly licensed booth. The plaintiffs attempt to distinguish this case on the factual differences between a fair and a beach and the substantial concern of the state in regulating crowds is not persuasive. Although there are undoubtedly different interests at stake in regulating speech at a beach, they are no less substantial. Further, while a state beach is a nonpublic forum, a fair under *Perry* is a limited public forum less susceptible to restrictions on free speech. Even if the court had found the park here to be a limited public forum, *Heffron* would be controlling.

■ The final claim raised by the plaintiffs is found in Count III of the amended complaint. Allegedly, Fillyaw engaged in content discrimination when he stated that the plaintiffs' should not call John D. MacArthur a "nudist" in their literature. The Naturists claim that this constituted a prior restraint because Fillyaw was using his official position as park manager to censor their intended message.

As a matter of law, the plaintiffs' construction of the statement in the letter does not raise a genuine issue of content censorship. Fillyaw's letter was not warning the Naturists that they would be arrested and prosecuted pursuant to the criminal law. The only reasonable construction of the letter is that Fillyaw was advising the plaintiffs that they could be subject to a civil suit by the MacArthur Foundation, not a criminal prosecution by the state. The letter explicitly mentions the Foundation in the sentence following the objectionable language. *See* Exhibit C at page 1120. As noted in *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631, 9 L.Ed.2d 584 (1963), friendly advice by an official as to the scope of a law does not rise to the level of informal censorship. *Id.* at 71–72, 83 S.Ct. at 639–640. This is a different case

than if Fillyaw had warned plaintiffs that use of the term "nudist" would subject them to criminal prosecution.

■ The defendant's motion for summary judgement as to the issue of Fillyaw's qualified immunity is also well grounded. To be protected by official immunity, the defendant must prove that the law was not settled at the time of the alleged misconduct and that the officer acted reasonably. In this case, the law was certainly not well settled to the degree that Fillyaw should have reasonably known his actions would violate the plaintiffs' rights. First Amendment cases generally involve a delicate balancing of the government's interests against the rights of the individual, the resolution of which is often fact specific and not foreseeable. This particular case was also unusual because of the plaintiffs' request to engage in many different forms of free speech. This was not a solicitation case or a political speech problem where there is only one manner of speech in issue. Furthermore, as found above, Fillyaw acted reasonably in light of the state of the law by allowing a limited demonstration. Therefore, Fillyaw is immune from liability under Counts II, III, and IV to the extent he was being sued as an individual for an award of damages.

Having considered the above matters and upon review of the record in this cause, it is hereby

ORDERED AND ADJUDGED that the motion for summary judgment filed by the plaintiffs, T.A. Wyner and The Naturist Society, Incorporated, is DENIED.

The motion for summary judgment filed by the defendant, John Fillyaw, is hereby GRANTED. The court finds that there are no genuine issues of material fact outstanding as to all four counts of the amended complaint and as to the defendant's defense of qualified immunity and that the defendant is entitled to judgment as a matter of law.

Accordingly, judgment shall be entered in favor of the defendant and against the plaintiffs by separate order of this court.

This action is hereby DISMISSED with prejudice.

EXHIBIT A

John D. MacArthur Beach State Park
10900 State Road 703
(On Singer Island)
North Palm Beach, Florida 33408

EXHIBIT B

John N. Fillyaw, Park Manager
John D. MacArthur Beach State Park
10900 State Road 703 (A–1–A)
North Palm Beach, Florida 33408

July 14, 1988

Dear Mr. Filliyaw,

As you know, my group is interested in advocating changes in laws at MacArthur State Park (Air Force Beach) which would allow clothing optional sunbathing in designated areas. Because we are non-violent naturists and do not want to offend anyone or violate any laws, we want to make sure we understand exactly what we are allowed to do and not do.

You advised us that there was a State dress code, requiring bathing suit bottoms

be at least 2 inches wide in the rear. You advised us that we could not approach people who were already on the beach with our literature. But that we could distribute literature from a card table located 100 yards North of the beach entrance, between 10:00 A.M. and 1:50 P.M. on July 9, 1988, pursuant to a permit.

You advised us that you did not think it was a good idea for the literature to mention the fact that Mr. MacArthur was himself a skinny-dipper, because the MacArthur Foundation was still involved in the development of the park.

We had also requested permission to set up an art exhibit on the beach, exhibiting sculpture depicting the human body, similar to the hyper-realistic sculpture displayed in shop windows on Worth Ave.

If this does not fairly and accurately state our understanding, please contact me immediately in writing.

Sincerely,

/s/ T.A. Wyner,

T.A. Wyner,

Co-ordinator

TA/ta

EXHIBIT C

State of Florida

DEPARTMENT OF NATURAL RESOURCES

Marjory Stoneman Douglas Building

3900 Commonwealth Boulevard

Tallahassee, Florida 32399

July 22, 1988

Ms. T.A. Wyner

14125 North Road

Loxahatchee, Fl. 33470

Dear Ms. Wyner:

In response to your letter of July 14, 1988, I have addressed each of your questions below and have cited State Statutes or Florida Administrative Code as applicable.

There is a requirement for bathing attire at all state parks in Florida. F.A.C. 16D–2.004(1)(e) states that "In every bathing area all persons shall be clothed so as to prevent any indecent exposure of the person. All bathing costumes shall conform to commonly accepted standards at all times. No person shall dress or undress on any beach, in any vehicle, rest room, or other place in any park area, except in such bathhouses or structures as may be provided by the Division for that purpose." In the case of State of Florida vs. McGuire, the courts have established that commonly accepted standards shall be determined by what is normally worn by persons visiting any beach in the area (in this case, Palm Beach County beaches) and not one specific beach. Therefore it has been determined that G–Strings, Pasties, Socks and other inappropriate wear will not be tolerated on beaches within state parks. The legal limit would be French-cut bikinis and/or thongs.

In reference to your permit, F.A.C. 16D–2.007(1)(a) states that "The sale or distribution of printed matter is permitted within park areas, provided a permit to do so has been issued by the manager, and provided further that the printed matter is not solely commercial advertising."

(1)(b) states that "Any application for such a permit shall set forth the name of the applicant; the name of the organization, if any; the date, time, duration, and location of the proposed sale or distribution; and the number of participants."

(1)(g) states that "Persons engaged in the sale or distribution of printed matter under this section shall not obstruct or impede pedestrians or vehicles, harass park visitors with physical contact or persistent demands, misrepresent the purposes or affiliations of those engaged in the sale or distribution, or misrepresent whether the printed matter is available without cost or donation."

(1)(h) states that "The sale or distribution of printed matter without a permit, or in violation of the terms or conditions of a permit is prohibited."

F.A.C. 16D–2.007(2) states that "Persons in any park who are intoxicated or who conduct themselves in a disorderly, offensive, obnoxious, obscene, or profane manner are considered public nuisances and are subject to arrest and ejection from the park. Common moral decency is the criterion for determining such public nuisance. No person shall abuse the facilities of a park or disregard park rules."

F.A.C. 16D-2.007(5) states that "No person shall solicit contributions or alms for any purpose nor shall any person circulate petitions of any kind in parks."

In our telephone conversation I advised you not to call Mr. MacArthur a "nudist" in your literature and advised you to use the term "skinny-dipper" instead because you might be opening yourselves up for a liable suit. Whether or not the MacArthur Foundation is involved with park development has no bearing on the matter.

I do not recall you asking to set up an art exhibit in conjunction with handing out your literature. In any case, that too would not be permitted under one or more of the following:

F.A.C. 16D-2.008(1) Merchandising. "No person shall expose or offer for sale any article or material, nor shall he place any stand, cart, or vehicle for the transportation, sale or display of any such article or material within any park."

F.A.C. 16D-2.008(2) Advertising and Publicity.

"(a) No person shall use park roadways or enter any park for the purpose of announcing, displaying advertising, or calling attention to any person, political party, religious institution or sect, or meeting or assembly thereof, or for the purpose of advertising any item or service for sale; nor shall displays of any form be used for such purposes; no person shall place on any public land or roadway adjacent to any park any vehicle whatsoever displaying such advertising or used for sales."

"(b) No person shall distribute, display or affix to any property any printed materials advertising any event within any park or roadway adjacent thereto."

"(c) No person shall make any display or exhibit of any kind or carry on any performance or do anything which will cause numbers of persons to congregate to the interference or obstruction to pedestrian and vehicular traffic or to other proper use of the park."

As the Park Manager, I am charged with enforcing all State Statutes and park Rules and Regulations. We are also charged with protecting our natural resources as well as our park visitors. We can not tolerate the actions of a few persons or groups to upset or destroy the harmony that our visitors have come to enjoy in Florida State Parks. We welcome you and your group and hope that you do visit and enjoy our parks, but you must realize that park rules and regulations will be enforced for your protection as well as the protection of other park visitors.

If you have any further questions, please do not hesitate to contact me.

Sincerely,
(s) John N. Fillyaw
John N. Fillyaw,
Park Manager
John D. MacArthur
Beach State Park

cc: Mr. R.A. Domroski
District 7 Manager
Florida Park Service