**ALABAMA HOSPITAL ASSOCIATION, a corporation; et al., Plaintiffs-Appellants**

v.

**Rebecca BEASLEY, Individually, and in her capacity as Commissioner of the Alabama Medicaid Agency, et al., Defendants-Appellees.**

No. 81–7965.

United States Court of Appeals, Eleventh Circuit.

April 14, 1983.

Sidney Lavender, Johnston, Barton, Proctor, Swedlaw & Naff, Gilbert E. Johnston, Jr., Birmingham, Ala., for plaintiffs-appellants.

Herman H. Hamilton, Jr., Robert Harris, Montgomery, Ala., for Beasley.

Kenneth E. Vines, Asst. U.S. Atty., Montgomery, Ala., Amy Yourman, Jeffrey Golland, Dept. of Health and Human Services, Washington, D.C., for Schweiker.

Before GODBOLD, Chief Judge, FAY and SMITH *, Circuit Judges.

* Honorable Edward S. Smith, U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The parties do not dispute the permissibility of a prospective reimbursement system under 42 U.S.C. § 1396a(a)(13)(A).

2. A State plan for medical assistance must provide

(D) for payment of the reasonable cost of inpatient hospital services provided under the plan, as determined in accordance with methods and standards, consistent with sec-

GODBOLD, Chief Judge:

This appeal concerns the validity of a plan that the Alabama Medical Services Administration has devised to reimburse Alabama hospitals for the services they provide under the Medicaid program.

The state became dissatisfied with the Medicare reimbursement principles it had previously used and developed an alternative reimbursement methodology, as permitted by the then effective code provision, 42 U.S.C. § 1396a(a)(13)(D) (1976). The essential features of the complicated alternative plan can be summarized as follows. The plan sets "prospective" reimbursement rates, reimbursing hospitals for costs they expect to incur under the Medicaid program.[1] After disallowing some types of costs, the plan distinguishes between educational, capital and operating costs. It departs from the Medicare methodology by *inter alia* limiting the amount of reimbursable capital and operating costs. Hospitals whose average unused capacity exceeds 50% of available licensed beds are reimbursed for less than all capital costs. The limitation on operating costs is achieved by dividing hospitals into classes according to their rural or urban locations and licensed bed sizes. Within each class the maximum amount of reimbursable operating costs is measured by the class's mean operating costs, plus one standard deviation.

Pursuant to the former code provision and accompanying regulations, the Department of Health and Human Services (HHS) formally approved the plan. *See* 42 U.S.C. § 1396a(a)(13)(D) (1976);[2] 42 C.F.R. §§ 447.261–447.316 (1979). While HHS's formal approval of the plan was pending, however, Congress had revised the relevant

tion 1320a–1 of this title, which shall be developed by the State and reviewed and approved by the Secretary and (after notice of approval by the Secretary) included in the plan, except that the reasonable cost of any such services as determined under such methods and standards shall not exceed the amount which would be determined under section 1395x(v) of this title as the reasonable cost of such services for purposes of subchapter XVIII of this chapter; ....

code provision. *See* 42 U.S.C.A. § 1396a(a)(13)(A) (West Supp.1982).[3]

The new provision, in an attempt to discourage soaring medical costs and upgrade the role of the states, differs from its predecessor in several ways. First, Congress altered the general standard used to assess reimbursement rates devised by the states. Under the former code provision, states must reimburse hospitals for the reasonable costs of Medicaid services. Because Congress considered this reasonable cost standard inflationary,[4] it lowered the threshold of permissible reimbursement rates, requiring that states reimburse "the costs which must be incurred by efficiently and economically operated facilities...." 42 U.S.C.A. § 1396a(a)(13)(A) (West Supp.1982). Second, Congress identified two special situations to which a state's reimbursement methodology must speak. The state's methods must "take into account the situation of hospitals which serve a disproportionate number of low income patients" and "provide, in the case of hospital patients receiving services at an inappropriate level of care ..., for lower reimbursement rates reflecting the level of care actually received...." Third, the new provision uses different language to describe the role of the Secretary in assessing methodologies proposed by the states. Whereas the former provision stated that state plans shall

be "reviewed and approved by the Secretary," the new provision provides that the state must find and make "assurances satisfactory to the Secretary" that the methodology fulfills statutory requirements.

Shortly after the above changes became law, the Alabama Hospital Association and ten Alabama hospitals filed suit to enjoin implementation of the plan, alleging the invalidity of the plan under the revised statute. Based on HHS's failure to review the plan in light of the new statute, the district court temporarily enjoined implementation of the plan pending completion of proceedings before it. HHS subsequently approved the plan in light of the new statute, concluding that the state had given satisfactory assurances of compliance. Following a trial on the merits, the district court held that HHS had properly approved the plan under the new statute and dissolved the temporary injunction it had issued.

On appeal plaintiffs argue that viewed in light of the new code provision HHS's approval of the plan cannot stand because (1) HHS failed to promulgate standards defining the efficient cost standard; (2) the state did not submit to HHS the information required by 42 C.F.R. § 447.255(b) (1981); (3) the plan does not take into account the situation of hospitals serving a disproportionate number of indigent patients; and

**3.** A State plan for medical assistance must provide

(A) for payment (except where the State agency is subject to an order under section 1396m of this title) of the hospital, skilled nursing facility, and intermediate care facility services provided under the plan through the use of rates (determined in accordance with methods and standards developed by the State) and which, in the case of hospitals, take into account the situation of hospitals which serve a disproportionate number of low income patients with special needs and provide, in the case of hospital patients receiving services at an inappropriate level of care (under conditions similar to those described in section 1395x(v)(1)(G) of this title), for lower reimbursement rates reflecting the level of care actually received (in a manner consistent with section 1395x(v)(1)(G) of this title) which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate to meet the costs

which must be incurred by efficiently and economically operated facilities in order to provide care and services in conformity with applicable State and Federal laws, regulations, and quality and safety standards and to assure that individuals eligible for medical assistance have reasonable access (taking into account geographic location and reasonable travel time) to inpatient hospital services of adequate quality; and such State makes further assurances, of adequate quality; and such state makes further assurances, satisfactory to the Secretary, for the filing of uniform cost reports by each hospital, skilled nursing facility, and intermediate care facility and periodic audits by the State of such reports;

**4.** *See* H.R.Rep. No. 97–158, 97th Cong., 1st Sess. 292 (1981); S.Rep. No. 97–139, 97th Cong., 1st Sess. *reprinted in* 1981 U.S.Code, Cong., & Ad.News 396, 744.

(4) the plan does not reduce rates for patients receiving an inappropriate level of care. We reject the first three arguments and accept the fourth.

### I. Standards

■ The current statute provides that the state must find and make "assurances satisfactory to the Secretary" that its reimbursement rates "are reasonable and adequate to meet the costs which must be incurred by efficiently and economically operated facilities...." 42 U.S.C.A. § 1396a(a)(13)(A) (West Supp.1982). Citing *Alabama Nursing Home Association v. Harris*, 617 F.2d 388 (5th Cir.1980),[5] appellants argue that HHS's approval of the plan is invalid because neither the Secretary nor the state has defined "the costs which must be incurred by efficiently and economically operated facilities." We find it unnecessary to decide the merits of appellants' contentions because, assuming arguendo that the contested phrase requires further definition, the failure to formulate such a definition constitutes harmless error.

Courts have not hesitated to apply a harmless error rule where the agency has committed an error that clearly had no bearing on its substantive decision.[6] *See, e.g.,* 5 U.S.C. § 706 (1976) (court reviewing agency action shall take "due account ... of the rule of prejudicial error");[7] *U.S. Steel Corp. v. EPA,* 595 F.2d 207, 215 (5th Cir.1979); *EEOC v. Exchange Security Bank,* 529 F.2d 1214, 1216–17 (5th Cir.1976); *Dodson v. National Transportation Safety Board,* 644 F.2d 647, 652 (7th Cir.1981); *Consolidated Gas Supply v. Federal Energy Regulatory Commission,* 606 F.2d 323, 328–29 (D.C.Cir.1979).[8] Here it is clear that the plan's reimbursement levels will satisfy whatever standards the Secretary adopts to define "costs which must be incurred by efficiently and economically operated facilities."

HHS approved the plan under the "reasonable cost" standard contained in the former code provision, a standard which is more generous from the appellants' perspective. Congress, in replacing the reasonable cost standard with one based on considerations of efficiency and economy, intended to give the states flexibility to lower reimbursement levels below those required by the reasonable cost standard. Because the new "efficient cost" standard is designed to lower the threshold of permissible reimbursement rates,[9] rates properly approved under the reasonable cost standard will satisfy the new efficient cost standard.

---

5. In *Alabama Nursing Home,* the provision at issue required states to reimburse nursing homes for services provided to Medicaid patients "on a reasonable cost related basis." 42 U.S.C.A. § 1396a(a)(13)(E) (West Supp.1982). In establishing the minimum allowable reimbursement level the regulations formulated by HEW required payments of "such actual allowable costs of a facility that is economically and efficiently operated." 42 C.F.R. § 450.-30(a)(3)(iv)(A) (1977). We held that HEW erred in failing to define an "efficiently and economically operated" facility, citing the crucial role that the phrase played in HEW's regulations.

6. One exceptional situation, not applicable here, is where agency action implicates basic due process rights. *See Doe v. Hampton,* 566 F.2d 265, 277 (D.C.Cir.1977); *Yiu Fong Cheung v. Immigration and Naturalization Service,* 418 F.2d 460, 464 (D.C.Cir.1969).

7. Section 706 applies even if judicial review of the agency's action is also expressly provided for by an enactment other than the APA. *See, e.g., Consolidated Gas Supply v. Federal Energy Regulatory Commission,* 606 F.2d 323, 329 (D.C.Cir.1979).

8. Under the formulation used by most courts, procedural errors are deemed harmless unless the court has a "substantial doubt" that the agency would not have reached the result it did. *See, e.g., Consolidated Gas Supply, supra; Kurzon v. U.S. Postal Service,* 539 F.2d 788, 796 (1st Cir.1976). *Cf. U.S. Steel Corp., supra* (harmless error rule applies only if error "clearly" did not affect outcome of agency's decision); *Arnold v. Morton,* 529 F.2d 1101, 1105 (9th Cir.1976) (where agency failed to consider issues legally relevant to issues at stake, agency's decision may be affirmed only if court is "subjectively certain" that outcome is correct).

9. Under current law, State Medicaid programs must reimburse hospitals for their "reasonable costs" of treating Medicaid patients unless the Department of Health and Human Services approves the use of an alternative method. *However, even the alternative methods approved by HHS generally must offer a reasonable cost basis for reimbursement. These requirements result in*

Appellants, however, do not contend that HHS's approval of the plan's reimbursement rates under the reasonable cost standard was based on flawed regulations or an inadequate application of its regulations.[10] In fact, they offer no plausible reason why the agency, after approving the plan under the more restrictive reasonable cost standard, might reach a different result under a suitably defined efficient cost standard.

Appellants, for instance, dispute the reasonableness of the plan's low occupancy penalty and its rural/urban and bed size classifications. In approving the plan under the reasonable cost standard, however, HHS, after explicitly analyzing these issues, specifically found the low occupancy penalty and the challenged classifications reasonable. See Memorandum from Robert Streiner, Director of HHS Division of Alternative Reimbursement Systems, to George R. Holland, HHS Regional Adminis-

trator (Aug. 7, 1981) (recommending plan's approval). Yet appellants do not explain why the agency's presumptively valid conclusion, see *Johnson's Professional Nursing Home v. Weinberger*, 490 F.2d 841, 844 (5th Cir.1974), is invalid under the reasonable cost standard or, more to the point, the efficient cost standard.

■ Appellants also object to the plan's failure to allow reimbursement for bad debts and telephone services, costs which the appellants argue must be incurred by an efficiently and economically operated hospital. This argument is devoid of merit. The Medicare reimbursement methodology that serves as the absolute upper limit on repayment under the former reasonable cost standard generally disallows both types of costs. See 42 C.F.R. §§ 405.420, 405.451 (1979). In revising the statute Congress sought to move away from the inflationary Medicare reimbursement methodology.

---

higher levels of inpatient hospital reimbursement than States might set if granted more flexibility. With States facing hospital cost escalation exceeding the rate of inflation and recent American Hospital Association data showing annual hospital cost increases of 20 percent, States could achieve significant savings in their Medicaid program by reducing hospital costs. If freed from the reasonable cost reimbursement criterion, States would likely develop hospital reimbursement systems which would incorporate tests of efficiency and prudent buyer requirement, and thereby lower costs.

In eliminating the current requirement that States pay hospitals on a Medicare "reasonable cost" basis for inpatient services under Medicaid, the Committee recognizes the inflationary nature of the current cost reimbursement system and intends to give States greater latitude in developing and implementing alternative reimbursement methodologies that promote the efficient and economical delivery of such services.

H.R.Rep. No. 97–158, 97th Cong., 1st Sess. 292 (1981) (emphasis added). *See also* S.Rep. No. 97–139, 97th Cong., 1st Sess. *reprinted in* 1981 U.S.Code, Cong. & Ad.News 396, 744:

The committee continues to believe that States should have flexibility in developing methods of payment for their medicaid programs and that application of the reasonable cost reimbursement principles of the medicare program for hospital services are inherently inflationary and contain no incentives for efficient performance.

10. The basic standards HHS used in evaluating Alabama's alternative plan are set forth in 42 C.F.R. § 447.261(d) (1979)

(d) If the medicare standards and principles are not adopted, the alternative methods and standards must meet all of the following criteria:

(1) They provide incentives for efficiency and economy.

(2) They provide for payment rates that are no higher than the amounts that would be determined using medicare principles of cost reimbursement, as modified by paragraph (c) of this section.

(3) They assure adequate participation of hospitals in the State's medicaid program and the availability of hospital services of high quality to recipients.

(4)–(5) [Reserved]

(6) At a minimum, they afford individual providers an opportunity to submit evidence and obtain prompt administrative review of payment rates set for them if—

(i) Costs of capital improvements were approved by a State's planning agency after the payment rates were set, and those costs were not considered in the rate calculation;

(ii) Costs of improvements were incurred because of certification or licensing requirements established after the payment rates were set, and those costs were not considered in the rate calculation; or

(iii) Incorrect data were used or an error was made in the rate calculation.

(7) They provide for documentation that is adequate to evaluate experience under the approved methods and standards.

Appellants' argument ignores the intent underlying the recent enactment. Congress intended the efficient cost standard to reduce, not increase, the permissible level of reimbursement below that available under Medicare principles.

Appellants thus make no colorable argument that HHS improperly approved the plan's general structure under the reasonable cost standard and that HHS, had it properly applied the new efficient cost standard would not have approved this structure. In this context, we hold that HHS's alleged error in failing adequately to elaborate the efficient cost standard is harmless.[11] We see no reason to require HHS to refine an analysis when, seen in light of appellants' own contentions, refinement would appear unnecessary, duplicative and wasteful.[12]

11. Our conclusion does not conflict with *Kollett v. Harris,* 619 F.2d 134, 146 (1st Cir.1980) where the court, after identifying procedural error, refused to assume that the error was harmless. Our holding is not based on a mere assumption. Rather, it rests on HHS's decision made under a standard more favorable to appellants than that contained in the current code. If HHS properly applied the reasonable cost standard, and appellants do not suggest otherwise, logic virtually compels the conclusion the plan also satisfies the efficient cost standard. This peculiar feature of the case distinguishes it from *Alabama Nursing Home, supra,* and *Arnold v. Morton,* 529 F.2d 1101, 1105 (9th Cir.1976) (where agency failed to address issues legally relevant to its decision, court must be subjectively certain that agency's result is correct before error deemed harmless).

12. Our disposition of this issue makes it unnecessary to decide whether and to what extent the new statute has diminished HHS's role in insuring that a state's methodology fulfills statutory requirements. *Compare* 42 U.S.C. § 1396a(a)(13)(D) (1976) (plans shall be "reviewed and approved by the Secretary") *with* 42 U.S.C.A. § 1396a(a)(13)(A) (West Supp. 1982) (state shall find and make assurances satisfactory to the Secretary that plan satisfies statute). *See* S.Rep. No. 97–139, 97th Cong., 1st Sess. *reprinted in* 1981 U.S.Code, Cong. & Ad.News 396, 744; H. Conference Rep. No. 96–1479, 96th Cong., 2d Sess. *reprinted in* 1980 U.S.Code, Cong. & Ad.News 5944 (explaining provision after which § 1396a(a)(13)(A) was modeled). *See also Mendoza v. HHS,* 655 F.2d 10, 13 (1st Cir.1981).

## II. *Informational Requirements*

■ Appellants object to the state's failure to submit to HHS the information required by HHS's regulations. 42 C.F.R. § 447.255 (1981).[13] These informational requirements are largely designed to facilitate HHS's decision regarding whether a state's reimbursement rates satisfy the efficient cost standard. Consistent with the analysis in the preceding section, we hold that HHS's approval under the reasonable cost standard, coupled with appellants' failure to object colorably to HHS's analysis, render any noncompliance with informational requirements harmless error.[14]

## III. *Hospitals Serving Low Income Patients*

The new statute requires that the reimbursement rates devised by the state "take

13. (b) Related information. The Medicaid agency must submit, with the assurances described in § 447.252(c), the following information:

(1) The amount of the average proposed payment rate for each type of provider (hospital, SNF, ICF, or ICF/MR), and the amount by which that average rate increased or decreased relative to the average payment rate in effect for each type of provider for the immediately preceding rate period;

(2) A quantified estimate of the short-term and, to the extent feasible, long-term effect the change in the rate will have on—

(i) The availability of services on a State-wide and geographic area basis;

(ii) The type of care furnished (for example, secondary or tertiary care);

(iii) The extent of provider participation; and

(iv) The degree to which costs are covered in hospitals that serve a disproportionate number of low income patients with special needs.

14. Besides relating to the efficient cost criterion, some of the required information serves the arguably distinct purpose of allowing HHS to assess the effect a state's reimbursement rates will have on the availability of Medicaid services. *See* 42 C.F.R. § 447.255(b)(2)(i–iii) (1981). It is highly unlikely, however, that the absence of such information affected HHS's decision. In evaluating reimbursement rates under the reasonable cost standard, it appears that HHS considered the effect the plan's rules would have on the quality and availability of care. *See* 42 C.F.R. § 447.262(d)(3) (1979).

into account the situation of hospitals which serve a disproportionate number of low income patients with special needs...." 42 U.S.C. § 1396a(a)(13)(A). In their initial brief appellants faulted the plan for failing specifically to address the special needs of such hospitals. Since that time, however, the state has amended its plan to accommodate the situation of hospitals serving large numbers of indigent patients. Although appellants, in their reply brief, do not challenge the adequacy of the amendment, they urge this court to hold that the unamended plan violates the statute. Otherwise, they assert, the state might rescind the amendment. Appellants' objections to the unamended plan are moot, and we decline to evaluate its validity.

█ Newly promulgated administrative regulations can have the effect of mooting a previously viable case. *See Sannon v. U.S.,* 631 F.2d 1247, 1250–51 (5th Cir.1980). As articulated by the Supreme Court, the general test is whether " 'the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome.' " *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) (quoting *Powell v. McCormack,* 395 U.S. 486, 496, 89 S.Ct. 1944, 1950, 23 L.Ed.2d 491 (1969)). Appellants' objections to the plan here are no longer "live" because they neither request any relief, such as money damages, for the period during which the unamended and allegedly insufficient plan was in effect nor question the adequacy of the amendment. The mere possibility that the state might rescind its recent amendment does not, for purpose of mootness, enliven the controversy. The issue is moot unless there is a " '*reasonable expectation* ...' that the alleged violation will recur...." 440 U.S. at 631, 99 S.Ct. at 1383 (quoting *U.S. v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)) (emphasis added). Nor does this issue come within the well-

recognized exception for alleged violations "capable of repetition yet evading review." *See Southern Pacific Terminal Co. v. ICC,* 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L.Ed. 310 (1911). The appellants may, without undue difficulty, assert their objections against the unamended plan if and when the state rescinds the amendment.

## IV. *Inappropriate Level of Care*

█ The revised code provision declares that "[a] state plan for medical assistance *must* provide ... in the case of hospital patients receiving services at an inappropriate level of care ... for lower reimbursement rates reflecting the level of care actually received...." 42 U.S.C.A. § 1396a(a)(13)(A) (West Supp.1982) (emphasis added). This language speaks to the situation where the hospital extends inpatient services to a patient who needs less expensive "post-hospital extended care services." 42 U.S.C.A. §§ 1395x(v)(1)(G), 1396a(a)(13)(A) (West Supp.1982). The appellants argue that the plan is deficient for failing to address Congress's concern that reimbursement rates account for patients who receive but do not medically need inpatient treatment. We agree.

The statute's express language affirmatively obligates the state to provide in its reimbursement plan for lower payment rates for patients who do not need inpatient care. HHS's regulations, restating the statute, also mandate inclusion of such a provision. 42 C.F.R. § 447.252(a)(3)(ii) (1981).[15] We therefore hold that the statute and its accompanying regulations require that the reimbursement rates specified in the plan account for patients receiving an "inappropriate level of care," as illuminated by 42 U.S.C.A. § 1395x(v)(1)(G) (West Supp.1982). To this extent HHS erred in approving the plan, because the plan contains no provision accounting for patients receiving an inappropriate level of care. Even assuming, as

---

**15.** (ii) The methods and standards used to determine payment rates must provide that reimbursement for hospital patients receiving services at an inappropriate level of care under conditions similar to those described in

section 1861(v)(1)(G) of the Act will be made at lower rates, reflecting the level of care actually received, in a manner consistent with section 1861(v)(1)(G); ....

**962**

appellees argue, that the revised provision reduces the level of scrutiny HHS must give state plans,[16] the Secretary has no discretion to approve a plan that on its face fails to fulfill the statute's plain requirements.[17] We accordingly remand to the district court so that it may devise an appropriate equitable remedy. Because we have upheld the plan's general structure against appellants' challenges, the district court may, pending development of an appropriate provision that accounts for patients receiving an inappropriate level of care, choose not to suspend operation of the plan altogether.

We AFFIRM in part, REVERSE in part and REMAND for proceedings consistent with this opinion.

---

16. *See* note 12 *supra.*

17. The language in the current provision describing HHS's role in reviewing a state's plan was drawn from a provision relating, *inter alia,* to reimbursement of "skilled ursing facilities." P.L. 96–499, § 962, 94 Stat. 2650–51 (1980) formerly codified at 42 U.S.C. § 1396a(a)(13)(E). In explaining that provision, the Conference Committee stated:

[W]hile the States have discretion to develop methods and standards on which the rates of reimbursement are based, the Secretary retains final authority to review the rates and to disapprove those rates if they do not meet the requirements of the statute.

H. Conference Rep. No. 96–1479, 96th Cong., 2d Sess. *reprinted in* 1980 U.S.Code, Cong. & Ad.News 5944.