The NATURIST SOCIETY, INC., T.A. Wyner, Plaintiffs–Appellants,

v.

John FILLYAW, individually and as official Park Manager, John D. MacArthur Beach State Park, Florida, Defendant–Appellee.

No. 90–5481.

United States Court of Appeals, Eleventh Circuit.

April 22, 1992.

1516

James K. Green, Green, Eisenberg & Cohen, West Palm Beach, Fla., Terry E. Allbritton, M. David Gelfand, New Orleans, La., for plaintiffs-appellants.

Martha Corry Olive, Bryant, Miller & Olive, Tallahassee, Fla., for defendant-appellee.

ON PETITION FOR REHEARING

Before HATCHETT and DUBINA, Circuit Judges, and CLARK, Senior Circuit Judge.

HATCHETT, Circuit Judge:

In this case, we hold that the John D. MacArthur Beach State Park is a public forum and remand the case to the district court for proceedings consistent with our holding.[1]

---

1. The petition for rehearing is granted. Our opinion published in the advance sheet at 934

## BACKGROUND

The Naturist Society, Inc. (Society), a Wisconsin corporation, advocates a "clothing optional" lifestyle and educates the public through writings, lectures, and public demonstrations. On June 29, 1988, Ms. T.A. Wyner, a Society member, contacted John Fillyaw, the park manager for the John D. MacArthur Beach State Park and advised him that the Society wished to demonstrate at the park. Wyner requested permission for Society members to approach park visitors and distribute literature, to circulate petitions for signatures, to display a two-foot by four-foot sign with the phrase "Sunnier Palms," to exhibit nude sculptures, and to appear nude or with minimal clothing. *Naturist Society, Inc. v. Fillyaw*, 736 F.Supp. 1103, 1106 (S.D.Fla.1990).

On July 6, 1988, Fillyaw issued a permit allowing the Society to distribute printed literature within the park. Fillyaw limited the distribution to three hours on July 9, 1988, and confined it to a small table 100 yards north of the beach entrance. The permit admonished Society members not to obstruct or impede park visitors and stated that "no banners or signs shall be permitted."

On July 9, 1988, Society members appeared at the park and distributed literature in accordance with the permit's limitations. The Society members did not carry signs or banners, did not display art work, and did not circulate petitions "because of the limitations imposed by Fillyaw." 736 F.Supp. at 1107. No member of the group appeared in the nude or in clothing more minimal than that normally found at the beach.

On July 14, 1988, Wyner wrote to Fillyaw to confirm the restrictions which he had imposed upon the demonstration. Fillyaw responded, reciting in detail the applicable Florida regulations governing bathing attire, the distribution of printed matter, and the use of displays and exhibits in state parks. He also advised Wyner that the regulations did not permit an "art exhibit," and included the regulation banning the circulation of petitions in state parks.[2] Finally, Fillyaw advised Wyner not to refer to John D. MacArthur as a "nudist" in the Society's literature, because doing so might subject the Society to a libel suit.

On March 23, 1989, the Society filed a four-count complaint against Fillyaw, both individually and in his official capacity as park manager for John D. MacArthur Beach State Park. An amended complaint filed March 30, 1989, alleged violations of the First, Ninth, and Fourteenth Amendments to the United States Constitution under 42 U.S.C. § 1983, seeking declaratory relief and damages. The amended complaint challenged the constitutionality of regulations governing attire, speech, and expressive conduct in Florida state parks.

Count I of the amended complaint challenged Florida Administrative Code Rule 16D–2.004(1)(e), the regulation governing beach attire. Count II challenged Florida Administrative Code Rule 16D–2.007(1)(a)–(h), the regulation prohibiting distribution of "printed matter" without a permit.[3]

F.2d 1177–80 was withdrawn from the bound volume pending consideration of the petition for rehearing.

2. The district court found that the Society sought to circulate petitions, carry signs, and display nude sculptures, but was prevented from doing so by Fillyaw's restrictions. 736 F.Supp. at 1106, 1107.

3. Before its amendment, rule 16D–2.007(1)(a)–(h) provided:

(a) The sale or distribution of printed matter is permitted within the park areas, provided a permit to do so has been issued by the manager and provided further that the printed matter is not solely commercial advertising.

(b) Any application for such a permit shall set forth the name of the applicant; the name of the organization, if any; the date, time, duration, and location of the proposed sale or distribution; and the number of participants.

(c) The manager shall, without unreasonable delay, issue a permit on proper application unless: (1) a prior applicant for a permit for the same time and location has been or will be granted a permit and the activities authorized by that permit do not reasonably permit multiple occupancy of the particular area; (2) the sale or distribution will present a clear and present danger to the public health or safety; (3) the number of persons engaged in the sale

Count III challenged Florida Administrative Code Rule 16D–2.007(2) and (5), the regulation governing general conduct in the park and banning the circulation of petitions.[4] Finally, Count IV of the amended complaint challenged Florida Administrative Code Rule 16D–2.008(1) and (2)(a)–(c), alleging that the rule was unconstitutional both on its face and as applied to the Society.[5]

On August 10, 1989, the district court denied the Society's motion for a preliminary injunction against enforcement of the challenged regulations. On May 4, 1990, the district court entered a final order granting Fillyaw's motion for summary judgment and denying the Society's motion for summary judgment. The district court held that the regulation governing beach attire was neither overbroad on its face nor vague as Fillyaw interpreted and applied it.[6] 736 F.Supp. at 1110–12. Finding the park to be a "non-public forum," the district court concluded that the other challenged regulations constituted legitimate, content-neutral, time, place, and manner restrictions on speech and expressive conduct. The district court specifically upheld the permitting scheme governing distribution of printed matter and the complete ban on signs, banners, art exhibits, and petitions. 736 F.Supp. at 1112–18. The district court's order purported to be a final disposition on the merits of all claims for legal and equitable relief. 736 F.Supp. at 1107.

During the course of the proceedings in the district court, the state of Florida re-

or distribution exceeds the number that can reasonably be accommodated in the particular location applied for; (4) the location applied for has not been designated as available for the sale or distribution of printed matter; (5) the activity would constitute a violation of an applicable law or regulation. If an applicant for a permit is denied, the applicant shall be so informed in writing, with the reason(s) for the denial clearly set forth.

(d) The manager shall designate on a map, which shall be available for inspection in the Office of the Manager, the locations within the park area that are available for the sale or distribution of printed matter.

(e) The permit may contain such conditions as are reasonably consistent with protection and use of the park area.

(f) No permit shall be issued for a period in excess of 14 consecutive days, provided that permits may be extended for like periods, upon a new application.

(g) Persons engaged in the sale or distribution of printed matter under this section shall not obstruct or impede pedestrians or vehicles, harass park visitors with physical contact or persistent demands, misrepresent the purposes of affiliations of those engaged in the sale or distribution, or misrepresent whether the printed matter is available without cost or donation.

(h) Sale or distribution of printed matter without a permit, or in violation of the terms or conditions of a permit is prohibited.

4. Rule 16D–2.007(2) provides:
 Persons in any park who are intoxicated or who conduct themselves in a disorderly, offensive, obnoxious, obscene or profane manner are considered public nuisances and are subject to arrest and ejection from the park. Common moral decency is the criterion for determining such public nuisance. No persons shall abuse the facilities of the park or disregard such rules.
 Before its amendment, subsection 5 provided: No person shall solicit contributions or alms for any purpose nor shall any person circulate petitions of any kind in parks.

5. Rule 16D–2.008(1) provides: "No person shall expose or offer for sale any article or material, nor shall he place any stand, cart or vehicle for the transportation, sale or display of any such article or material within any park."
 Before its amendment, subsection 2 provided:
 (a) No person shall use park roadways or enter any park for the purpose of announcing, displaying advertising, or calling attention to any person, political party, religious institution or sect, or meeting or assembly thereof, or for the purpose of advertising any item or service for sale; nor shall displays of any form be used for such purposes; no person shall place on any public land or roadway adjacent to any park or any vehicle whatsoever displaying such advertising or used for sales.
 (b) No personal shall distribute, display or affix to any property any printed materials advertising any event within any park or roadway adjacent thereto.
 (c) No person shall make any display or exhibit of any kind or carry on any performance or do anything which will cause numbers of persons to congregate to the interference or obstruction to pedestrian and vehicular traffic or to any other proper purpose of the park.

6. The Society does not appeal from this determination.

vised the regulations, but the revised regulations were not in effect at the time the district court ruled. Also, during the district court proceedings, Fillyaw designated a site at the beach for the exhibition of displays, signs, and the distribution of literature. It is unclear whether a permit is required for activity at the designated site. The district court did not consider these new factual matters.

After the district court entered its final order, the state of Florida adopted amendments to the regulations challenged in this case. In relevant part, the amended regulations allow signs, displays, and exhibits in Florida parks, after a permit is obtained. Thus, the "new" regulations still subject signs, displays, and exhibits to a permitting procedure. Fla.Admin.Code Ann. R. 16D–2.007(1); 16D–2.008(2)(a), (b). Similarly, the amended regulations allow circulation of petitions, but only in accordance with a permitting procedure. Fla.Admin.Code Ann. R. 16D–2.007(5). The Society has not applied for a permit under the new regulations, nor has it attempted to demonstrate without a permit.

## ISSUES

(1) Whether this case remains justiciable; (2) whether the district court erred in granting summary judgment for Fillyaw on the Society's claim for damages; and (3) whether the district court erred in granting summary judgment for Fillyaw on the Society's claims for injunctive relief.

## DISCUSSION

### A. Justiciability

Fillyaw contends that this case no longer presents a live case or controversy. He argues that the Society's claims are moot as to the original regulations because Florida has amended those regulations, and not ripe as to the amended regulations, because the Society never sought a permit under those regulations.

### 1. Mootness

As the Supreme Court recently noted, "[the] case or controversy requirement sub-sists through all stages of federal judicial proceedings, trial and appellate. To sustain our jurisdiction ... it is not enough that a dispute was very much alive when suit was filed.... The parties must continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–78, 110 S.Ct. 1249, 1253–54, 108 L.Ed.2d 400, 411 (1990) (internal quotations and citations omitted). Fillyaw argues that the amendment of the challenged Florida park regulations after the district court entered judgment removed any personal stake the Society had in the outcome of this lawsuit. He also argues that the controversy is moot because Fillyaw granted the Society a permit to demonstrate, and the demonstration occurred.

■ We hold that the Society maintains a sufficient personal stake in the outcome of this lawsuit to satisfy the case or controversy requirement. First, the Society's original and amended complaints stated claims for damages on all counts. The district court found that the Society sought to approach park visitors on and off the beach to distribute literature, sought to carry a sign and display nude sculpture, and sought to circulate petitions. 736 F.Supp. at 1106. It further found that the Naturists were limited in their distribution of literature and prevented from carrying a sign, displaying nude sculpture, and circulating a petition "because of the limitations imposed by Fillyaw." 736 F.Supp. at 1107. Thus, the claim for damages saves from mootness the Society's contention that the "old" park regulations were unconstitutional as applied to it. *See Memphis Light, Gas and Water Div. v. Kraft*, 436 U.S. 1, 8, 98 S.Ct. 1554, 1559, 56 L.Ed.2d 30 (1978). Similarly, the Society's claim that Fillyaw suppressed its speech with the "threat" of a libel suit remains alive, because that claim also seeks compensation for a past injury.

■ Second, the amendments to the challenged regulations do not moot the Society's claims for injunctive relief. Where a statute is amended after the entry of judgment in the trial court, but before the

decision of the appellate court, the appellate court must "review the judgment of the district court in light of [the] law as it now stands, not as it stood when the judgment below was entered." *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 414, 92 S.Ct. 574, 575, 30 L.Ed.2d 567 (1972). At every stage in the proceedings, the court must "stop, look, and listen" to determine the impact of changes in the law on the case before it. *Kremens v. Bartley*, 431 U.S. 119, 135, 97 S.Ct. 1709, 1718, 52 L.Ed.2d 184 (1977) (impact of changes in challenged statute on composition of certified class of plaintiffs). Where a law is amended so as to remove its challenged features, the claim for injunctive relief becomes moot as to those features. *See Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477–80, 110 S.Ct. 1249, 1254–55, 108 L.Ed.2d 400, 411–12 (1990); *Kremens v. Bartley*, 431 U.S. 119, 128–29, 97 S.Ct. 1709, 1714–15, 52 L.Ed.2d 184 (1977); *Diffenderfer v. Central Baptist Church*, 404 U.S. 412, 414, 92 S.Ct. 574, 575, 30 L.Ed.2d 567 (1972); *Alabama Hospital Ass'n v. Beasley*, 702 F.2d 955, 960–61 (11th Cir. 1983); *Int'l Society for Krishna Consciousness v. Eaves*, 601 F.2d 809, 815–16 (5th Cir.1979). The entire case becomes moot only where "a superseding statute ... satisfies *all* the principles sought in an attack on the prior statute." *Johnson v. State*, 586 F.2d 387, 388 (5th Cir.1978) (emphasis added).

■ Where a superseding statute leaves objectionable features of the prior law substantially undisturbed, the case is not moot. This court so held in *Ciudadanos Unidos de San Juan v. Hidalgo County Grand Jury Commissioners*, 622 F.2d 807, 824 (5th Cir.1980) (amendment of Texas grand jury selection system to make challenged method optional did not moot plaintiffs' challenge). The court noted that statutory amendment moots a claim only where the amendment "completely eliminate[s] the harm of which plaintiffs complained." 622 F.2d at 824. Similarly, in *Alabama Hospital Ass'n v. Beasley*, 702 F.2d 955 (11th Cir.1983), this court found that amendments to the Alabama state medicaid plan mooted some of plaintiffs' claims but not

others. The court looked at the amended plan, dismissed those claims which the amendments rendered moot, but reviewed the district court's determination on those issues unaffected by the amendments. 702 F.2d at 961. *See also Int'l Society for Krishna Consciousness v. Eaves*, 601 F.2d 809 (5th Cir.1979).

■ Thus, a superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law. To the extent that those features remain in place, and changes in the law have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case is not moot. Applied to this case, the amended regulations did not moot the Society's facial challenge to the permitting scheme. Although the permitting scheme now applies to signs, displays, exhibits, and petitions, as well as leaflets, the challenged aspects of that scheme remain essentially as they were before the amendments. The scheme still involves the regulation of speech and conduct, and it still operates in the same allegedly unconstitutional fashion.

The new regulations moot only the Society's demand for an injunction against enforcement of the prohibition on signs, displays, exhibits, and petitions. Because that prohibition no longer exists, having been eliminated by the new regulations, this court can no longer enjoin its enforcement. Repeal of the regulation means the injury is not capable of repetition, but should Florida choose to reinstate the ban, the Society may seek relief in the district court. *Diffenderfer*, 404 U.S. at 414–15, 92 S.Ct. at 575–76.

■ Finally, granting the Society a permit under the old regulations did not moot the claim for injunctive relief. A case is not moot where the original injury is "capable of repetition, yet evading review." *Southern Pacific Terminal Co. v. ICC*, 219 U.S. 498, 31 S.Ct. 279, 55 L.Ed. 310 (1911). To satisfy this standard, the Society must demonstrate (1) a "reasonable expectation or a demonstrated probability

that the same controversy will recur involving the same complaining party," and (2) that the "challenged action was in its duration too short to be fully litigated prior to its cessation or expiration." *The News–Journal Corp. v. Foxman*, 939 F.2d 1499, 1507 (11th Cir.1991) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482–83, 102 S.Ct. 1181, 1183–84, 71 L.Ed.2d 353 (1982) (*per curiam*)). Wyner argued in the district court that the Society desired to "engage in the prohibited activities in a future demonstration, but ... cannot do so because of fear of arrest and prosecution." The district court held that Florida did not moot the case through its amendments to the park regulations. As we noted above, those amendments, which have now been enacted, do not entirely remove the alleged constitutional injury of which the Society complained. Accordingly, because the Society has argued its intent to engage in the prohibited conduct, and Florida has not argued that it will not enforce the amended regulations, this case manifests "a demonstrated probability that the same controversy will recur, involving the same complaining party." *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1184.

The facts of this case also satisfy the second requirement of the applicable test. On June 24, 1988, the Society requested a permit to demonstrate on July 9, 1988. Fillyaw issued the restrictive permit on July 6, 1988, three days before the scheduled demonstration. Thus, the "challenged action was ... too short to be fully litigated prior to its cessation or expiration." *Murphy*, 455 U.S. at 482, 102 S.Ct. at 1183.

### 2. Standing

▮▮▮ To establish standing, the plaintiff must "allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984). Normally, a plaintiff has standing only to attack a statute "as applied" to the plaintiff. *See Sentinel Communications Co. v. Watts*, 936 F.2d 1189, 1197 (11th Cir.1991). In the unique First Amendment context, however,

[i]t is well-established that ... one has standing to challenge a statute or scheme 'on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not his conduct could be proscribed by a properly drawn statute, and whether or not he applied for a license.'

*Sentinel*, 936 F.2d at 1197 (quoting *Freedman v. Maryland*, 380 U.S. 51, 56, 85 S.Ct. 734, 737, 13 L.Ed.2d 649 (1965)). Where, as here, a licensing statute "allegedly vests unbridled discretion in a government official to permit or deny expressive activity," the plaintiff may proceed in a lawsuit regardless of whether the government granted a permit, denied a permit, or the plaintiff never applied for a permit. *Sentinel*, 936 F.2d at 1197 (quoting *City of Lakewood v. Plain Dealer*, 486 U.S. 750, 755, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988)).

### B. The Damages Claim

The Naturists contend that Fillyaw's restrictions on their speech and expressive conduct entitle them to damages. Fillyaw responds, and the district court found, that those restrictions were appropriate for a "non-public" forum. In addition, Fillyaw contends, because First Amendment law in this area is not clear, he is immune from suit under the qualified immunity doctrine.

### 1. Forum Considerations

▮▮▮ In determining the constitutionality of the restrictions imposed upon the Naturists, we must first determine whether John D. MacArthur Beach State Park is a public or non-public forum. The nature of the forum, as either public or non-public, determines the standards courts must apply in reviewing the propriety of state action infringing upon speech or expressive conduct. *See Perry Education Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45–46, 103 S.Ct. 948, 954–955, 74 L.Ed.2d 794 (1983). Classification of the forum as either public or non-public does not end the inquiry, however, because we must also consider the specific characteristics of the forum, once we classify it as public or non-

public, in order to determine whether the restrictions were constitutional. *See Heffron v. Int'l Society for Krishna Consciousness,* 452 U.S. 640, 650–51, 101 S.Ct. 2559, 2565–66, 69 L.Ed.2d 298 (1981).

The law compels the conclusion that John D. MacArthur Beach State Park is a public forum. In *Perry,* the Supreme Court stated:

> In places which by long tradition or by government fiat have been devoted to assembly and debate, the rights of the state to limit expressive activity are sharply circumscribed. At one end of the spectrum are streets and *parks* which 'have immemorially been held in trust for the use of the public and time out of mind have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions.' *Hague v. CIO,* 307 U.S. 496, 515 [59 S.Ct. 954, 963, 83 L.Ed. 1423] (1939). In these *quintessential public forums* the government may not prohibit all communicative activity.

460 U.S. at 45, 103 S.Ct. at 954–55 (emphasis added). The Supreme Court and the Eleventh Circuit have consistently held that parks are public forums. *See, e.g., Ward v. Rock Against Racism,* 491 U.S. 781, 798, 109 S.Ct. 2746, 2757, 105 L.Ed.2d 661 (1989); *United States v. Grace,* 461 U.S. 171, 177, 103 S.Ct. 1702, 1706, 75 L.Ed.2d 736 (1983); *Hague v. CIO,* 307 U.S. 496, 515, 59 S.Ct. 954, 963, 83 L.Ed. 1423 (1939); *Central Florida Nuclear Freeze Campaign v. Walsh,* 774 F.2d 1515, 1523 (11th Cir.1985).

The district court held that John D. MacArthur Beach State Park is a non-public forum.[7] The court found that the park is not really a park but rather a "beach," which the public visits to "swim ... play games, or merely rest under the sunshine enjoying the natural beauty of the scenery." 736 F.Supp. at 1116. It distinguished the beach from a public street or city park on the grounds that beach visitors "do not reasonably expect to be subjected to the full exercise of others' rights of free speech." 736 F.Supp. at 1116. The court noted that beach visitors feel vulnerable to approaching speakers because the beach visitors are clad in fewer clothes than usual. 736 F.Supp. at 1117. Because beach-goers sit or lie with their possessions arranged around them, the court observed, they cannot easily move when a person approaches to exercise his or her First Amendment rights. Finally, the court noted that the park has few law enforcement officers to ensure that speakers and solicitors are not overly bothersome to beach visitors.

The district court believed it was "stat[ing] the obvious" when it remarked that the park is a "beach." But, as the diagram appended to the court's opinion reveals, the park is more than a beach. *See* 736 F.Supp. at 1119. In particular, it contains parking lots, a nature center, and walkways. Speech and expressive conduct in these areas may not pose the same evils as on the beach. In declaring the park a non-public forum based solely upon its beach characteristics, the district court ignored other areas of the park which are not beach.

Moreover, the facts the district court recites do not render the park a non-public forum. City parks are quintessential public forums. *Perry,* 460 U.S. at 45, 103 S.Ct. at 954. In these parks, as at the beach, the public may swim, play games, rest, and enjoy the surroundings. Although the district court remarked on the small size of John D. MacArthur Beach State Park, most city parks are even smaller, presenting the same space problems the district court contemplated. As at the beach, people sunbathe in city parks, sometimes in less than the usual amount of clothing, and they

---

**7.** The district court did not explicitly hold that the park is a non-public forum, but that assumption clearly guided its analysis. *See* 736 F.Supp. at 1115–18. The closest the court came to an explicit finding on the matter is at page 1117, where it stated:

> Also, the scope of access which the state must give to any particular type of speech is more

limited in a nonpublic forum. The plaintiffs chose this setting and they should not be heard to complain if the manner of their speech is limited.

736 F.Supp. at 1117.

often arrange their possessions around themselves, making it difficult to move when someone approaches them. As at John D. MacArthur Beach State Park, many city parks suffer a shortage of law enforcement personnel. In short, none of the facts the district court found adequately distinguish John D. MacArthur Beach State Park from a typical city park for First Amendment purposes.

■ Even though John D. MacArthur Beach State Park is a public forum, the Naturists are not free to exercise First Amendment rights in any way they see fit. *Heffron,* 452 U.S. at 647–48, 101 S.Ct. at 2563–64. The state may impose reasonable content-neutral, time, place, and manner restrictions on the exercise of free speech even in public forums. *See, e.g., Ward v. Rock Against Racism,* 491 U.S. 781, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989); *Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984); *Heffron,* 452 U.S. 640, 101 S.Ct. 2559. Many of the facts which the district court found to distinguish John D. MacArthur Beach State Park from the typical city park do not go to the forum analysis, but rather show that the government may set time, place, and manner restrictions on speech which reflect the special character of public beaches.

### 2. Time, Place, and Manner Restrictions

■ Having determined that John D. MacArthur Beach State Park is a public forum, we remand the case to the district court for it to determine whether Fillyaw's limitations constituted legitimate time, place, and manner restrictions. Such restrictions must meet the same standard whether the expression is "oral or written or symbolized by conduct." *Clark v. Community for Creative Non–Violence,* 468

U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984). In *Perry,* the Supreme Court announced the proper standard for the district court to apply to the facts in this case: Time, place, and manner limitations are valid provided that they "are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Perry,* 460 U.S. at 45, 103 S.Ct. at 955; *Ward,* 491 U.S. at 791, 109 S.Ct. at 2753; *Clark,* 468 U.S. at 293, 104 S.Ct. at 3069.[8]

### 3. Qualified Immunity

■ In considering the Society's damages claim, the district court must also bear in mind the applicable law regarding qualified immunity. Public officials are immune in their individual capacities from suits for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This standard protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). In this circuit, we have stated the *Harlow* standard as two requirements. First, the public official must show that the acts complained of were "within the scope of his discretionary authority when the allegedly wrongful acts occurred." Second, the plaintiff must show that the public official's actions "violated clearly established constitutional law." *Rich v. Dollar,* 841 F.2d 1558, 1563–64 (11th Cir.1988). Clearly established law must be determined "through the eyes of an objective, reasonable government official." *Nicholson v.*

---

8. The district court did not err in finding that the Society's First Amendment claim based upon Fillyaw's purported "threat" of a libel suit was without merit. As the district court found, "the only reasonable construction of the letter is that Fillyaw was advising [the Society] that they could be subjected to a civil suit by the MacArthur Foundation, not a criminal prosecution by the state." 736 F.Supp. at 1118. Fillyaw's state-

ment amounted to little more than unsolicited legal advice, not a threat of prosecution. *Compare Bantam Books v. Sullivan,* 372 U.S. 58, 71–72, 83 S.Ct. 631, 639–640, 9 L.Ed.2d 584 (1963) (law enforcement officers' consultation with distributor of printed material regarding scope of obscenity law would not amount to informal censorship).

*Georgia Dept. of Human Resources,* 918 F.2d 145, 147 (11th Cir.1990).[9]

### C. The Claim for Injunctive Relief

 The Society seeks an injunction against enforcement of the Florida regulations governing expressive conduct in state parks on the grounds that these regulations are unconstitutional on their face. In particular, the Society contends that the permitting scheme vests too much discretion in the park manager to deny permits based upon the content of the speech or expressive conduct. The Society also argues that the scheme is facially invalid because it does not provide for prompt administrative and judicial review of permit denials.

The district court held that the challenged regulations did not vest too much discretion in the park manager. In support of this holding, the district court noted that the Society was in fact granted a permit to demonstrate "without undue delay." 736 F.Supp. at 1116. The district court also held that it did not have to review the adequacy of procedural protections in the regulations, because the regulations were content-neutral. 736 F.Supp. at 1113.

Although the Society's claims for declaratory and injunctive relief are justiciable, it would be inappropriate for this court to consider them in light of the amended regulations, without district court findings of fact and conclusions of law. Accordingly, we remand the case to the district court for it to consider the Society's facial challenge under the amended regulations.

### CONCLUSION

We remand this case to the district court for it to reconsider the damages claim in light of our holding that John D. MacArthur Beach State Park is a public forum. In addition, the district court must reconsider the Society's claim for permanent injunctive relief in light of the new amendments to the regulations.

AFFIRMED in part, REVERSED in part, and REMANDED.

CLARK, Senior Circuit Judge, concurring in part, dissenting in part:

I concur in Part A of the opinion which relates to Justiciability.

I concur in part and dissent in part with respect to Part B which relates to the damages claim and forum considerations.

In this first amendment free speech case we find ourselves in a quandary over labels: public forum, limited public forum, or non-public forum. In the majority opinion at note 7 reference is made to the fact that the district court did not explicitly hold that the park is a non-public forum. I am less concerned with labels than I am with results although I agree that the forum here is closer to being public than non-public. I like Justice Kennedy's approach to the problem of labels:

> It is not necessary, however, to make a precise determination whether this sidewalk and others like it are public or nonpublic forums; in my view, the postal regulation at issue meets the traditional standards we have applied to time, place and manner restrictions of protected expression. *See Clark v. Community for Creative Non–Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3068–3069, 82 L.Ed.2d 221 (1984).

*United States v. Kokinda,* 497 U.S. 720, 110 S.Ct. 3115, 3125–26, 111 L.Ed.2d 571 (1990) (Kennedy, J. concurring).

In *Kokinda* volunteers for the National Democratic Policy Committee set up a table on the sidewalk near the entrance of the Bowie, Maryland, post office to solicit contributions, sell books, etc. The sidewalk was on postal property and provided the means of access to the post office, but there is no suggestion that access was obstructed. The Fourth Circuit, 866 F.2d 699 (1989), reversed the convictions of those charged with trespassing, holding that the

---

**9.** As we have previously observed, the qualified immunity doctrine "aims at one goal: to keep the public official out of the courtroom, free to exercise discretionary duties under clearly es-

tablished law without the constant threat of lawsuits." *Ansley v. Heinrich,* 925 F.2d 1339, 1345 (11th Cir.1991).

postal sidewalk was a traditional public forum and analyzed the regulation [forbidding solicitations on postal property] as a time, place, and manner regulation. In reversing, Justice O'Connor, speaking for four justices, with Justice Kennedy separately concurring, wrote:

> Since Lehman [v. City of Shaker Heights, 418 U.S. 298, 94 S.Ct. 2714, 41 L.Ed.2d 770 (1974)], "the Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. Accordingly, the extent to which the Government can control access depends on the nature of the relevant forum." Cornelius v. NAACP Legal Defense and Educational Fund, 473 U.S. 788, 800, 105 S.Ct. 3439, 3448, 87 L.Ed.2d 567 (1985).
>
> . . . .
>
> Regulation of speech activity on governmental property that has been traditionally open to the public for expressive activity, such as public streets and parks, is examined under strict scrutiny. Id. [460 U.S.], at 45, 103 S.Ct., at 954–955. Regulation of speech on property that the Government has expressly dedicated to speech activity is also examined under strict scrutiny. Ibid. But regulation of speech activity where the Government has not dedicated its property to First Amendment activity is examined only for reasonableness. Id., at 46, 103 S.Ct., at 955–956.
>
> . . . .
>
> Even conceding that the forum here has been dedicated to some First Amendment uses, and thus is not a purely non-public forum, under Perry, regulation of the reserved non-public uses would still require application of the reasonableness test. See Cornelius, supra, 473 U.S., at 804–806, 105 S.Ct., at 3450–3451.
>
> Thus, the regulation at issue must be analyzed under the standards set forth for nonpublic fora:
>
> it must be reasonable and "not an effort to suppress expression merely because public officials oppose the speaker's

view." Perry, supra, 460 U.S. at 46, 103 S.Ct. at 955.

Kokinda, 110 S.Ct. at 3125–26.

There is nothing in the record in this case that even suggests that the State of Florida has dedicated its public beaches to First Amendment activity. It is obvious to all of us that each First Amendment case requires a separate analysis. In this case I think the district court's result was 100% correct and his analysis passes the reasonableness test established in Cornelius:

> Even protected speech is not equally permissible in all places and at all times. Nothing in the Constitution requires the Government freely to grant access to all who wish to exercise their right to free speech on every type of Government property without regard to the nature of the property or to the disruption that might be caused by the speaker's activities. Cf. Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 136, 97 S.Ct. 2532, 2543, 53 L.Ed.2d 629 (1977). Recognizing that the Government, "no less than a private owner of property, has power to preserve the property under its control for the use to which it is lawfully dedicated," Greer v. Spock, 424 U.S. 828, 836, 96 S.Ct. 1211, 1217, 47 L.Ed.2d 505 (1976), the Court has adopted a forum analysis as a means of determining when the Government's interest in limiting the use of its property to its intended purpose outweighs the interest of those wishing to use the property for other purposes. Accordingly, the extent to which the Government can control access depends on the nature of the relevant forum.

Cornelius v. NAACP Legal Defense & Educational Fund, 473 U.S. 788, 800, 105 S.Ct. 3439, 3447, 87 L.Ed.2d 567 (1985).

The majority concludes its Part B. 1. section with this statement: "Many of the facts which the district court found to distinguish John D. MacArthur Beach State Park from the typical city park do not go to the forum analysis, but rather show that the government may set time, place, and manner restrictions on speech which reflect

the special character of public beaches". The majority then in Part B. 2. states that we are remanding to the district court for it to determine "whether Fillyaw's limitations constituted legitimate time, place and manner restrictions". The district court has already made that determination. I think it is correct. I concur with the district court that people enjoying the beaches with their families should be free from solicitations, that there would be a right of privacy even if the beach is a public forum, and that the plaintiffs were given an ample opportunity to publicize their views on nudity and to solicit new adherents to their view when they were permitted to demonstrate on July 9, 1988, at a fixed location approximately one hundred yards north of the park's entrance.

In addition to agreeing with the district court's opinion and judgment with respect to the reasonableness of the park's regulations and Fillyaw's implementation of them, I agree that Fillyaw has qualified immunity from any of plaintiffs' claims for damages. The plaintiffs have failed to show that Fillyaw's actions violated clearly established constitutional law. Thus the judgment in his favor should be affirmed.